809 So.2d 1248 (2002)
Patricia RICHARD, On Behalf of Edna Deville,
v.
LOUISIANA EXTENDED CARE CENTERS, INC.
No. 01-1492.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
Chris Paul Villemarette, J. Minos Simon, Ltd., Lafayette, LA, for Patricia Richard.
Victor Herbert Sooter, Sooter & Savoie, Alexandria, LA, for Louisiana Extended Care Centers, Inc.
Court composed of SYLVIA R. COOKS, MARC T. AMY and GLENN B. GREMILLION, Judges.
*1249 AMY, Judge.
The curatrix of a nursing home resident filed suit against the nursing home alleging the resident sustained serious injury as a result of an employee's negligent or tortious conduct. The defendant filed an exception of prematurity, arguing that the action was controlled by the Medical Malpractice Act insofar as it required initial submission to a medical review panel. The plaintiff alleged that a separate remedy existed under the Nursing Home Residents' Bill of Rights, falling outside the requirements of the Medical Malpractice Act. The trial court concluded that the matter is covered by the Medical Malpractice Act, requiring submission to the medical review panel. The plaintiff appeals. For the following reasons, we affirm in part, reverse in part, and remand.

Factual and Procedural Background
The petition instituting this matter alleged that Edna Deville was a resident of Senior Village Nursing Home in Opelousas, Louisiana, on March 16, 2001, when she allegedly sustained serious bodily injury. As a result of Ms. Deville's injuries, her representative filed this suit naming as defendant, Louisiana Extended Care Centers, Inc., the operator of Senior Village.[1] Suit was brought under the Nursing Home Residents' Bill of Rights, La.R.S. 40:2010.8, et seq. The petition contained allegations that Ms. Deville was injured "when she was viciously attacked by an employee of Senior Village Nursing Home, or alternatively, allowed to fall from her wheelchair." Thus, intentional tort and negligence theories were advanced and damages associated with the injuries sought.
The defendant filed a "Petition for Judicial Review Under the Louisiana Medical Malpractice Act and/or Dilatory Exception of Prematurity," asserting that causes of action advanced by the petition involve claims of professional negligence or malpractice. Thus, the defendant argues, the matter must first be submitted to a medical review panel as is required by the Medical Malpractice Act, La.R.S. 40:1299.41, et seq. The trial court agreed, granting the exception of prematurity and dismissing the plaintiff's demands without prejudice.
The plaintiff appeals, assigning the following as error:
The trial court erred in granting defendant's exception of prematurity when plaintiff's allegations concern violations of the Nursing Home Patient's Bill of Rights which grants plaintiff a cause of action for denial of those rights in addition to other remedies available to plaintiff including a claim of malpractice.

Discussion
The plaintiff argues that the actions pursued in the petition arise under the Nursing Home Residents' Bill of Rights, which is argued to be a separate, distinct, and additional cause of action than any under the Medical Malpractice Act. In the plaintiff's brief, it is asserted that "[n]o conflict exists between the Nursing Home Patient's Bill of Rights and the Medical Malpractice Act as the nursing home patient is afforded a remedy `in addition to and cumulative with other legal' remedies available."
The Nursing Home Residents' Bill of Rights provides comprehensive guarantees *1250 for nursing home residents' safety and well-being. See La.R.S. 40:2010.8. The enforcement portion of the legislation is provided at La.R.S. 40:2010.9, which states:
A. Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees, costs of the action, and damages, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.
B. The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies.
The plaintiff urges that Section B, which contains the language "in addition to and cumulative with other legal and administrative remedies," indicates that the action pursued against the defendant may proceed outside of the Medical Malpractice Act.
The defendant points to the similarly comprehensive language of the Medical Malpractice Act, specifically La.R.S. 40:1299.47, which requires that:
A. (1) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
. . . .
B. (1)(a)(i) No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.[2]
As is apparent from the above quoted excerpts, the statutes have areas of *1251 common concern. La.Civ.Code art. 13 provides: "Laws on the same subject matter must be interpreted in reference to each other." Furthermore, "[w]here two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail." Guitreau v. Kucharchuk, 99-2570, p. 5 (La.5/16/00); 763 So.2d 575, 579. In this instance, each statute is specific and neither more obviously controlling for this type of suit. Thus, the two statutes must be harmonized.
Although the trial court correctly concluded that the statutes must be read together, requiring submission to the medical review panel for malpractice claims, the trial court's judgment applied the requirement to the entirety of the plaintiff's claim. We conclude that it is not applicable to this extent. Rather, the plaintiff's petition seeks damages related to both intentional and negligent conduct. La.R.S. 40:1299.41(A) defines "malpractice" as:
Any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
(Emphasis added.)
Addressing the scope of the Medical Malpractice Act, the Louisiana Supreme Court has explained:
[T]he Act does not protect the provider from all acts of misconduct between the provider and his patients. It is only triggered by the negligent care and treatment of the patient. Were the provider to commit an intentional tort against his patient or negligently injure his patient in a manner unrelated to medical treatment, the limitation of liability would not be available.
Descant v. Adm'rs of Tulane Educ. Fund, 93-3098, p. 5 (La.7/5/94); 639 So.2d 246, 250.
The plaintiff's petition alleges liability due to negligent or intentional tort, asserting:
On or about March 16, 2001, petitioner, Edna Deville suffered severe, brutal and barbaric injuries to her face, head, nose and arms, including but not limited to a deep stellate laceration of the forehead, bilateral temporal contusions, brain hemorrhage, and contusions to the arms and elbows, when she was viciously attacked by an employee of Senior Village Nursing Home, or alternatively, allowed to fall from her wheelchair.
As La.R.S. 40:1299.41(A)(8) clearly applies to "unintentional tort or breach of contract" and the petition contains claims of negligent care and an intentional tort due *1252 to its reference of an "attack," the trial court erred in finding that the entirety of the plaintiff's claim must be submitted to a medical review panel. We affirm that portion of the trial court's judgment granting the exception of prematurity and dismissing the plaintiff's claim insofar as "malpractice" or negligent conduct is alleged. However, we reverse that portion of the judgment granting the exception of prematurity and dismissing the claim insofar as intentional tort is alleged. We remand for further proceedings on the intentional tort claim.

DECREE
For the foregoing reasons, we affirm the granting of Community Care Center of Opelousas, L.L.C., d/b/a Senior Village Nursing Home's Petition for Judicial Review Under the Louisiana Medical Malpractice Act and/or Dilatory Exception of Prematurity insofar as it relates to assertions of unintentional tort and/or breach of contract. We further affirm the dismissal of the plaintiff's claim in this regard. We reverse that portion of the judgment dismissing the plaintiff's claim insofar as it relates to assertions of intentional tort. Costs of this proceeding are to be shared equally between the plaintiff and the defendant. This matter is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
COOKS, J., dissents in part and will assign written reasons.
COOKS, J., Dissenting.
I agree with the Majority in declaring what has been true since its adoption: The Medical Malpractice Act "applies to `unintentional tort or breach of contract." The Act, thus, clearly does not prevent plaintiff from seeking judicial redress of any intentional tort claims she may have against the medical provider without first invoking a medical review panel. The Majority's reversal of the trial court's dismissal of plaintiff's intentional tort claims is a result which had to follow even if the Nursing Home Residents' Bill of Rights was never enacted. Apparently finding an interpretation dilemma exists between the Medical Malpractice Act and the Nursing Home Residents' Bill of Rights, the majority notes "[w]here two statutes deal with the same subject matter, they should be harmonized if possible; however if there is a conflict, the statute specifically directed to the matter at issue must prevail." Straining to find harmony, the Majority opts to exclude from the Medical Malpractice Act conduct which was never included in the first place. In the end, the Majority's harmony is logically flawed; and, if allowed to stand, judicially overrules the legislature's declared intent to provide remedies by the adoption of the Nursing Home Residents' Bill of Rights "in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospital or other governmental agencies" for the violations of any resident's rights as specified in La. R.S. 40:2010.8. The rights delineated in this provision are numerous but include "the right to receive adequate and appropriate health care and protective and support services ..."
I am not at all convinced this provision, in particular, requires us to find harmony between the statutes or to declare a conflict exists. The legislature when adopting the Nursing Home Residents' Bill of Rights was clearly attempting to protect the rights of the elderly and other residents when housed at nursing homes to *1253 be treated with dignity and to receive the same medical care available to the population at large without deprivation because of their aging or special status. It is the latter "status" evil the Nursing Home Bill of Rights seeks to address. If the denial of adequate or appropriate health care results from the resident's "status," whether it is the consequence of a negligent or intentional act, the remedies provided in the Nursing Home Bill of Rights are available. I, therefore, disagree with the Majority's affirmance of the trial court's dismissal of plaintiff's negligence claims to the extent they may arise as a result of her "status" at the nursing home.
NOTES
[1] Suit was initially brought by Patricia Richard, Curatrix of Edna Deville. Following Ms. Deville's death in June 2001, her siblings, Nita Prudhomme and Joseph Doucet, were substituted as representatives.
[2] Nursing homes are considered "health care providers" under the Act, due to La.R.S. 40:1299.41(A), which provides:

(1) "Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center, tissue bank, dentist, registered or licensed practical nurse or certified nurse assistant, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, social worker, licensed professional counselor, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C. 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
. . . .
(4) "Hospital" means any hospital as defined in R.S. 40:2102; any "nursing home" or "home" as defined in R.S. 40:2009.2; or any physician's or dentist's offices or clinics containing facilities for the examination, diagnosis, treatment or care of human illnesses.