835 So.2d 460 (2003)
Patricia RICHARD, On Behalf of Edna Deville
v.
LOUISIANA EXTENDED CARE CENTERS, INC.
No. 2002-C-0978.
Supreme Court of Louisiana.
January 14, 2003.
*461 J. Minos Simon, Lafayette, Chris P. Villemeratte, Counsel for Applicant.
Victor H. Sooter, Alexandria, Elizabeth B. Hilburn, Counsel for Respondent.
E. Joseph Bleich, Ruston, Counsel for Louisiana Nursing Home Association, Amicus Curiae.
VICTORY, J.
At issue in this case is whether plaintiff's allegation under the Nursing Home Residents' Bill of Rights, La. R.S. 40:2010.8, et seq. (the "NHRBR") that she was negligently allowed to fall out of her wheelchair at a nursing home must be submitted to a medical review panel pursuant to the provisions of the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (the "MMA"). After reviewing the record and the applicable law, we affirm the judgment of the Third Circuit Court of Appeal holding that medical malpractice claims against a nursing home qualified under the MMA must be brought pursuant to the provisions of the MMA; however, we remand this case to the trial court to determine whether plaintiff's allegations of negligence are medical malpractice claims under Louisiana law.

FACTS AND PROCEDURAL HISTORY
The curatrix of Edna Deville, a 92-year-old double amputee, filed a petition on Ms. Deville's behalf alleging that while she was a resident of Senior Village Nursing Home in Opelousas, on March 16, 2001, she sustained serious bodily injury.[1] Suit was *462 filed against the operator of Senior Village, Louisiana Extended Care Centers, Inc. ("LECC") under the NHRBR, alleging the following:
On or about March 16, 2001, petitioner, Edna Deville suffered severe, brutal and barbaric injuries to her face, head, nose and arms, including but not limited to a deep stellate laceration of the forehead, bilateral temporal contusions, brain hemorrhage, and contusions to the arms and elbows, when she was viciously attacked by an employee of Senior Village Nursing Home, or alternatively, allowed to fall from her wheelchair.
The injuries sustained by Edna Deville were caused by acts of defendant in violation of the Nursing Home Patients' Bill of Rights in the following, non-exclusive, particulars:
(a) employing the individuals who assaulted and battered Edna Deville for which defendant is vicariously liable;
(b) failing to protect Edna Deville from abusive employees;
(c) failing to treat Edna Deville fairly, courteously, and depriving her of her dignity; and
(d) failing to protect Edna Deville from injury and in so failing, failing to provide appropriate health care.
LECC filed a petition for judicial review under the MMA, and/or an exception of prematurity, asserting that the causes of action involve claims of professional negligence or malpractice, and therefore must first be submitted to a medical review panel as required by the MMA. The trial court granted the exception of prematurity and dismissed the plaintiff's demands without prejudice. The court of appeal affirmed in part and reversed in part, finding that plaintiff's claims of "unintentional tort and/or breach of contract" are governed by the MMA, but that her intentional tort claims are not, and thus remanded the matter for further proceedings. Richard v. La. Extended Care Ctrs., Inc., 01-1492 (La.App. 3 Cir. 3/6/02), 809 So.2d 1248. We granted plaintiff's writ application to determine whether medical malpractice claims against a nursing home that is a qualified health care provider under the MMA must be submitted to a medical review panel under the MMA or can be brought outside of the provisions of the MMA under the NHRBR. Richard v. La. Extended Care Ctrs., Inc., 02-0978 (La.6/14/02), 817 So.2d 1149.[2]

DISCUSSION
Private nursing homes have been regulated by the state since 1958. See La. R.S. 40:2009.1. In 1978, the Legislature established formal complaint procedures available to "[a]ny person having knowledge of the alleged abuse or neglect of a patient of a nursing home, ... or who ... has knowledge that a nursing home patient is not receiving care and treatment to which he is entitled under state or federal laws ..." La. R.S. 40:2009.13. Complaints are investigated by the Department of Health and Human Resources, and, if made in good faith, render the complainant immune from civil liability that may be asserted as a result of the complaint. La. R.S. 40:2009.13(E), 40:2009.14, et seq.
*463 In 1985, the Legislature adopted the NHRBR for nursing home residents, enforceable by the DHHR and by a private civil action. La. R.S. 40:2010.6-2010.9. The legislative intent for these provisions is stated in La. R.S. 40:2010.6:
The legislature finds that persons residing within nursing homes are isolated from the community and often lack the means to assert their rights as individual citizens. The legislature further recognizes the need for these persons to live within the least restrictive environment possible in order to retain their individuality and some personal freedom. It is therefore the intent of the legislature to preserve the dignity and personal integrity of residents of nursing homes through the recognition and declaration of rights safeguarding against encroachments upon nursing home residents' right to self-determination. It is further the intent that the provisions of R.S. 40:2010.6 through R.S. 40:2010.9 complement and not duplicate or substitute for other survey and inspection programs regarding nursing homes.
La. R.S. 40:2010.6. The NHRBR requires that all nursing homes adopt and make public a statement of the rights and responsibilities of its residents and treat such residents in accordance with the following rights: (1) to civil and religious liberties; (2) to free communication, including use of mail, telephone, overnight visitation outside the nursing home with family and friends, flexible visitation hours; (3) to present grievances; (4) to manage one's own finances; (5) to be informed of what services he has to pay for without governmental assistance; (6) to be adequately informed of his medical condition and proposed treatment, and participate in the planning of such treatment, including the right to refuse treatment, unless otherwise indicated by the resident's physician; (7) "to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Department of Health and Hospitals;" (8) to have privacy; (9) to be treated with dignity; (10) to be free from mental and physical abuse and from physical and chemical restraints, except in limited circumstances; (11) to be transferred and discharged under certain circumstances; (12) to select a personal physician; (13) to retain and use personal clothing and possessions; (14) to copies of rules and regulations; (15) to information concerning bed reservation in case of hospital stay; (16) to prompt response to all reasonable requests and inquires; (17) to withhold payment to physician if not visited; (18) to refuse medical research request; (19) to use tobacco; (20) to consume alcohol; (21) to reasonably retire and rise; (22) to have change in medical condition reported. La. R.S. 40:2010.8.
La. R.S. 40:2010.9 clearly provides for civil enforcement of any violation of La. R.S. 40:2010.8 as follows:
A. Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees, costs of the action, and damages, unless the court finds that the losing plaintiff has acted *464 in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.
B. The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies.[3]
La. R.S. 40:2010.9.
Plaintiff claims her rights under the NHRBR were violated in that she had the right to be free from physical abuse and the right to receive appropriate and adequate health care under La. R.S. 20:2010.8 and therefore, she has a cause of action against the nursing home under La. R.S. 40:2010.9, pursuant to which jurisdiction lies in the district court and under which she is entitled to actual damages, plus attorney fees and costs. Further, she claims that because La. R.S. 40:2010.9(B) provides that this remedy is "in addition to and cumulative with other legal and administrative rights available to a resident," she may bring this action regardless of any other remedies to which she may be entitled, such as the MMA. Defendant claims, and the lower courts summarily agreed, that plaintiff's negligence claims arise from "medical malpractice" and therefore must first proceed through a medical review panel under the provisions of the MMA. According to plaintiff, even if her claims are medical malpractice claims under the MMA, that does not prevent her from bringing these claims under the NRHBR and bypassing the medical review panel procedure.
As set out in La. R.S. 40:1299.47(B)(1)(a)(i), "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."
Courts have expressed different views on whether a medical malpractice claim against a nursing home qualified under the MMA must be brought pursuant to the provisions of the MMA, or may be brought under the NHRBR. Two months after the Third Circuit issued the opinion in this case, ruling that plaintiff's negligence claims against the defendant had to be presented to a medical review panel under the MMA, another panel of the Third Circuit rendered a contrary opinion in a case where the nursing home allegedly allowed a patient to fall out of her wheelchair. Pender v. Natchitoches Parish Hospital, 01-1380 (La.App. 3 Cir. 5/15/02), 817 So.2d 1239. In Pender, the accident was allegedly caused by the staff allowing the resident to fall out of her wheelchair, despite knowledge that she required restraints and/or constant supervision. Based on the fact that the accident occurred when the resident was not receiving any specific medical treatment, the majority held the resident's claim did not fall within the confines of the MMA and was not governed by its procedural devices.[4] A dissent cited Richard for the *465 proposition that the plaintiff's claims for negligence against the nursing home, based on health care services rendered, whether brought under the MMA or the NHRBR, must be reviewed by a medical review panel prior to suit.
Likewise, two different sections of the federal court for the Eastern District of Louisiana have disagreed upon whether a claim for negligent care against a nursing home is covered by the provisions governing the MMA. In Schenck v. Living Centers-East, Inc., 917 F.Supp. 432 (E.D.La. 1996), a case alleging negligent care by the nursing home and asserting claims of breach of contract and violation of the NHRBR, the court held that the one-year statute of limitations applicable to medical malpractice claims did not apply to the breach of contract claim, holding that "nursing homes" were not health care providers under La. R.S. 9:5628. 917 F.Supp. at 436. Further, the court held that plaintiff's claim under the NHRBR was not duplicative of the tort claim and refused to dismiss it, on the basis that the remedies provided by the NHRBR are "in addition to and cumulative with other legal and administrative remedies available to a resident ...." Id. In Petre v. Living Centers-East, Inc., 935 F.Supp. 808 (E.D.La.1996), the court specifically expressed its disagreement with Schenck and held that because plaintiff's claim for negligent care "be it in contract or tort, ... is essentially one for medical malpractice," and because a nursing home is a "health care provider" under the MMA, the one-year statute of limitations applicable to medical malpractice claims, La. R.S. 9:5628, was applicable to the case.
Also, the Second Circuit, in a case involving whether suspension or interruption of prescription occurred by virtue of the filing of a medical review panel complaint, which also contained allegation of violation under the NHRBR, stated that:
First, we observe the claims against defendants herein, regardless of how they were characterized, are all malpractice claims against health care providers. Accordingly, under the provisions of La. R.S. 40:1299.47, these claims must be reviewed by a medical review panel.
Gorham v. HCA Health Services of Louisiana, 34,721 (La.App. 2 Cir. 5/17/01), 786 So.2d 348.[5]
*466 Against that backdrop, we must interpret the NHRBR and the MMA to determine how they apply to a medical malpractice claim against a nursing home, a claim to which both statutes seem to apply. The law of statutory interpretation in this area is as follows:
A statute's meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions.
ABL Mgmt. v. Board of Supervisors, 00-798 (La.11/28/00), 773 So.2d 131, 135 (cites omitted); La. C.C. art. 13.
As this Court stated in Sewell v. Doctors Hosp.,
The principal purpose of the Medical Malpractice Act is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patients Compensation Fund. As long as a health care provider remains qualified under the Act, the health care provider and his insurer are liable for malpractice only to the extent provided in the Act.
The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.
600 So.2d 577, 578 (La.1992).
In our view, the Legislature did not intend for the NHRBR to repeal, supplant, or replace the MMA's application to medical malpractice claims against nursing homes. First, "qualified health care providers," such as LECC in this case, have furnished the requisite financial responsibility and paid a surcharge to a state-created entity, entitling them coverage under the MMA[6]. What would be the point of this if they were not entitled to the "principal advantages" for qualified health care providers in actions against them for malpractice, i.e., the right to a medical review panel, and the limitation of liability? See Id., at 578, n. 1; Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415.
Second, the Legislature amended the MMA in 2001, sixteen years after the enactment of the NHRBR, to include "nursing *467 homes" as an enumerated sub-category of qualified health care providers in La. R.S. 40:1299.41(A)(1), rather than the prior inclusion of nursing homes under the definition of "hospitals" in La. R.S. 40:1299.41(A)(4). Had the Legislature intended that malpractice claims against nursing homes be exempt from the requirements of the MMA, then surely they would not have reinforced the fact that a "nursing home" is a health care provider under the MMA by specifically including it in the list of enumerated health care providers found in La. R.S. 40:1299.41(A)(1). Further, it is equally clear that, at the time the NHRBR was enacted in 1985, it was never intended to remove nursing homes from the coverage of the MMA, as this would have caused major uproar by the nursing home interests throughout the state. Instead, it was supported by these nursing home interests,[7] and in fact, there was no reference to the MMA in the entire legislative record of the NHRBR. See "Minutes of Meetings of the House Committee on Health and Welfare;" "Minutes of Meetings of the Senate Committee on Health and Welfare;" the original, engrossed and enrolled versions of Act No. 734.
We find that the NHRBR and the MMA can be harmonized. The NHRBR contemplates matters far beyond the scope of the MMA. When the original bill was presented to the House, the sponsor of the bill stated that "this bill would provide a means for individuals residing in nursing homes of protecting their rights to live within the least restrictive environment possible in order to retain their individuality and some personal freedom." Minutes of Meeting, House Committee on Health and Welfare, June 7, 1985, pages 13-14. Because such residents "are isolated from the community and often lack the means to assert their rights as individual citizens," the Legislature provided that a successful claimant is entitled to attorneys' fees, in addition to costs and damages, in order to better enable residents to find legal representation. Accordingly, the NHRBR addresses twenty-two different rights of nursing home residents. Twenty-one of these rights could never be characterized as "malpractice." They include such varied rights as religious liberties, the right to be treated with dignity, the right to smoke and consume alcohol under certain circumstances, and the right to go to bed and rise in accordance with reasonable requests. Whereas the NHRBR encompasses nearly two dozen rights afforded residents in all nursing homes (not just the qualified ones), the MMA only relates to "malpractice" claims against qualified nursing homes. While there are many claims that a person can assert under the NHRBR that would not fall within the definition of medical malpractice and would, therefore, not be subject to review before a medical review panel, any claim of medical malpractice against a qualified health care provider is encompassed within the ambit of the MMA and must be reviewed by a medical review panel prior to suit.
The important remaining issue is whether plaintiff's allegation that she was negligently allowed to fall from her wheelchair is a medical malpractice claim under the MMA. "In general, any conduct by a hospital complained of by a patient is properly within the scope of the [MMA] if it *468 can reasonably be said that it comes within the definitions of the Act, even though there are alternative theories of liability." Rogers v. Synthes, Ltd., 626 So.2d 775 (La.App. 2 Cir.1993) (action alleging defective prosthesis installed in patient, with no allegations of negligence, was a medical malpractice action subject to the provisions of the MMA). However, "[b]ecause the Medical Malpractice Act limits the liability of health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage." Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169.
The MMA defines "malpractice" as:
... any unintentional tort or any breach of contract based on health care or professional services rendered or which should have been rendered by a health care provider to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers ...
La. R.S. 40:1299.41(A)(8) (emphasis added).
As stated above, it is undisputed that LECC is a nursing home covered under the definition of "qualified health care provider" under the MMA. "Tort" is defined in the MMA as "any breach of duty or any negligent act or omission causing injury or damage to another." La. R.S. 40:1299.41(A)(7). "Patient" means "a natural person who receives or should have received health care from a licensed health care provider, under a contract express or implied." La. R.S. 40:1299.41(A)(3). "Health care" is defined as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement." La. R.S. 40:1299.41(A)(9).
It is clear that the nursing home's staff's alleged act of negligently allowing Ms. Deville to fall from her wheelchair involved the "handling of a patient, including loading and unloading of a patient," which comes directly under the MMA's definition of "malpractice." However, as this Court stated in Price, "[w]hile clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving `health care' from the doctor or hospital when the negligent rendition of professional services occurs." 693 So.2d at 1172. "This means that the act or omission must have occurred `during the patient's medical care, treatment or confinement.'" Id. at 1172-73.
In the case of a nursing home, the nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. However, in our view, it was not the intent of the legislature to have every "act, ..., by any health care provider ... during the patient's ... confinement" in a nursing home covered by the MMA. La. R.S. 40:1299.41(A)(9) (defining "health care" under the MMA). While the alleged act did involve the handling of a patient under La. R.S. 40:1299.41(A)(8), it does not necessarily constitute medical malpractice. As we have previously held in Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, 315-316, to be covered under the MMA, the negligent act must be related to medical treatment. In Coleman, we set forth a six-part test to determine whether a negligent act by a health care provider is covered under the MMA:

*469 (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.
Thus, the first issue, whether plaintiff's allegations of wrongdoing are related to treatment and are caused by a dereliction of professional skill, is a key issue in this case. From the record before us, we cannot determine whether Ms. Deville was placed in the nursing home for any specific treatment of a particular condition, rather than 24-hour custodial shelter, or whether Ms. Deville was on her way to or from any medical treatment when the accident occurred. Likewise, many of the other Coleman factors cannot be decided on this record. Thus, we remand this case to the trial court for a determination of whether the allegations that Ms. Deville was negligently allowed to fall from her wheelchair constitute allegations of medical malpractice under Coleman.

CONCLUSION
La. R.S. 40:1299.47(B)(1)(a)(i) provides that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." The Legislature specifically included nursing homes such as LECC under the provisions of the MMA, mandating that malpractice claims against the LECC proceed according to the requirements of the MMA. The Legislature's enactment of the NHRBR was not intended to remove malpractice claims against qualified health care providers from the coverage of the MMA, but was instead intended to provide nursing home residents with important rights to preserve their dignity and personal integrity, and to provide a means by which they could enforce these rights. These rights however, do not include the right to bring a malpractice claim against the nursing home outside the confines of the MMA.
However, not all negligent acts by a nursing home will constitute medical malpractice under the MMA. To constitute a medical malpractice claim, the alleged negligent act must be related to the nursing home resident's medical treatment at the nursing home under the requirements of Louisiana law.

DECREE
For the reasons expressed herein, the judgment of the court of appeal is affirmed in part and remanded to the trial court for a determination of whether plaintiff's allegations of negligence against the defendant are medical malpractice claims under Louisiana law.
AFFIRMED IN PART; REMANDED.
NOTES
[1] Suit was initially brought by Patricia Richard, curatrix of Ms. Deville. Following Ms. Deville's death in June of 2001, her siblings, Nita Prudhomme and Joseph Doucet, were substituted as representatives. All will be referred to as "plaintiff."
[2] LECC concedes that plaintiff's intentional tort claim is not subject to the provisions of the MMA. As the court of appeal correctly held, the MMA defines medical malpractice as "any unintentional tort or any breach of contract based on health care or professional services rendered ...." La. R.S. 40:1299.41(A).
[3] La. R.S. 40:2010.8(D)(1) provides that any violations of the residents' rights set forth by the NHRBR shall constitute grounds for "appropriate action" by the Department of Health and Hospitals, that residents shall have a private right of action as set forth in La. R.S. 40:2010.9, and that state courts shall have jurisdiction to enjoin a violation of residents' rights and to assess fines for violations not to exceed $100 per individual violation.
[4] The majority performed an analysis using the six standards for determining whether certain conduct by a qualified health care provider constitutes malpractice under the MMA, as delineated in Coleman v. Deno, infra, and determined that the conduct involved did not constitute malpractice.
[5] In two other cases, alleging breaches of the NHRBR, the Second Circuit denied the defendants' writ applications seeking reversal of two trial court rulings denying the defendants' exceptions of prematurity. Hollier v. Guest House of Bossier, LLC, (La.App. 2 Cir. 6/13/02); Jackson v. Comm-Care, ___ (La. App. 2 Cir. 4/11/01), writ denied, 02-1335 (La.9/13/02).

The First and Second Circuits have also held that the cause of action provided by La. R.S. 40:2010.9 relating to medical treatment constitute an offense or quasi-offense, subject to the application of La. C.C. art. 2315.1 and is a heritable obligation, capable of being brought by a successor of the nursing home resident. In so doing, the First Circuit in Short v. Plantation Mgmt. Corp. affirmed an award of $650,000.00 in general damages to the survivor of a nursing home resident who alleged that the nursing home was negligent in failing to present the resident to a doctor for evaluation by a physician, in violation of the NHRBR. 99-0899 (La.App. 1 Cir. 12/27/00), 781 So.2d 46. The First Circuit held that the cause of action provided by the NHRBR is a heritable, rather than personal, obligation. Id. See also Gibson v. Monroe Manor Nursing Home, 32,806 (La.App. 2 Cir. 3/3/00), 756 So.2d 583. Neither court was presented with the precise issue here, i.e., whether such an action was subject to the provisions of the MMA. In affirming an award of $650,000.00, the First Circuit did not apply the $500,000 MMA cap on damages, but there is no indication in the opinion that the defendant nursing home was a qualified health care provider under the MMA or urged that issue as a defense. Gibson, which was before the appellate court on an exception of no cause of action, was confined strictly to the issue of heritability. Finally, the Second Circuit in Rachal v. Peters, 28,655 (La.App. 2 Cir. 9/25/96), 680 So.2d 1280, held that a claim under the NHRBR arose from a source other than La. C.C. art. 2315.1 and therefore did not have to be brought by a person according to the codal scheme of survival action beneficiaries under La. C.C. art. 2315.1.
[6] It is undisputed that a nursing home is a "health care provider" under the MMA. When the MMA was enacted, the definition of "health care provider" in La. R.S. 40:1299.41(A)(1) included a "hospital," and the definition of "hospital" included "any nursing home or home as defined in La. R.S. 40:2009.2." In 2001, the definition of "health care provider" found in La. R.S. 40:1299.41(A)(1) was amended to specifically include "nursing home." LECC is a "qualified" health care provider as it qualified pursuant to La. R.S. 40:1299.42 and was issued a Certificate of Enrollment by the Patients Compensation Fund.
[7] See Minutes of Meeting, House Committee on Health and Welfare, June 7, 1985, House Bill 710 ("Representative Jackson asked Mr. Steve Adams of the Louisiana Nursing Home Association if they had any opposition to the bill. Mr. Adams indicated the Nursing Home Association had some amendments they would like to be considered, but they were in favor of the bill.")