852 So.2d 1170 (2003)
Bentheal McLEMORE, Plaintiff-Appellant,
v.
WESTWOOD MANOR NURSING and REHABILITATION, L.L.C., Defendant-Appellee.
No. 37,450-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 2003.
*1171 Gary J. Arsenault, Alexandria, for Appellant.
John A. Stassi, II, James A. Holmes and Janet L. White, New Orleans, for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
WILLIAMS, J.
Plaintiff, Bentheal L. McLemore, appeals a district court judgment sustaining a dilatory exception of prematurity filed by the defendant, Westwood Manor Nursing & Rehabilitation, LLC ("Westwood Manor").[1] The district court held that plaintiff's complaints should have been submitted to a medical review panel prior to filing suit in the district court. Consequently, the district court found plaintiff's claims were premature and dismissed his suit without prejudice. For the following reasons, we affirm.

FACTS
On June 26, 2002, the plaintiff, Bentheal L. McLemore, filed suit against Westwood Manor. In his petition, McLemore alleged that on June 29, 2001, while he was a resident of Westwood Manor and under its exclusive care, custody, control and supervision, he was dropped by the certified nursing assistants and then placed in his bed without medical attention. According to plaintiff's petition, his left leg was severely broken when he was dropped and he experienced blood clots because of complications arising from the broken leg. Plaintiff's petition outlined several items of "negligence, fault and deviation from the standard of care":
a. Negligently dropping McLemore;

*1172 b. Failing to properly treat Bentheal L. McLemore;
c. Failing to provide appropriate care under the circumstances;
d. Failing to properly supervise its staff;
e. Failing to properly train staff in the care of elderly patients;
f. Failing to recognize the risk involved in handling a person of 59 years of age without adequate personnel;
g. Failing to take the necessary steps and precautions in moving McLemore;
h. Failing to properly train and supervise employees in the appropriate methodology of moving elderly individuals around; and
i. Failing to administer proper medical treatment and other acts of negligence, fault and/or deviation from the standard of care which will be shown at the trial of this matter.
On July 22, 2002, the defendant, Westwood Manor, filed a dilatory exception of prematurity, asserting that plaintiff's claim was premature because he had not presented it to a medical review panel as required by the Louisiana Medical Malpractice Act ("MMA"), LSA-R.S. 40:1299.47. After a hearing, the trial court granted the defendant's exception and dismissed the plaintiff's suit without prejudice. This appeal followed.

DISCUSSION

Prematurity
The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116. Accordingly, a claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been screened by a pre-suit medical review panel. Id.
Plaintiff argues that since he was not receiving medical care or treatment for any specific condition at the time of his injury, then his claims are not governed by the MMA and, therefore, the prior submission of his claims to a medical review panel was not required.
The pertinent legal principles applicable to this case are discussed in the Louisiana Supreme Court's recent opinion in Richard v. Louisiana Extended Care Centers, Inc., XXXX-XXXX (La.1/14/03), 835 So.2d 460. In that case, a nursing home patient was alleged to have been negligently allowed to fall out of her wheelchair. An important issue in the case was whether this allegation was a medical malpractice claim under the MMA.
In its analysis, the Supreme Court noted that the MMA defines "malpractice" as:
Any unintentional tort or breach of contract based on health care or professional services rendered or which should have been rendered by a health care provider to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. LSA-R.S. 40:1299.41 A(8).
Next, the court noted that the nursing home's staff's alleged act of negligently allowing the nursing home resident to fall from her wheelchair clearly involved the *1173 "handling of a patient, including loading and unloading of a patient," which comes directly under the MMA's definition of "malpractice." However, the court then quoted from Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169, as follows:
[W]hile clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving "health care" from the doctor or hospital when the negligent rendition of professional services occurs.
The Richard court went on to observe that in the case of a nursing home, a resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. Thus, while the alleged act in Richard did involve the handling of a patient under LSA-R.S. 40:1299.41(A)(8), the court stated that it did not necessarily constitute medical malpractice because the negligent act must be related to medical treatment. The court cited with approval the six-part test of Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, for determining whether a negligent act by a health care provider is covered under the MMA:
(1) Whether the particular wrong is "treatment related" or caused by dereliction of professional skill;
(2) Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) Whether the pertinent act or omission involved assessment of the patient's condition;
(4) Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) Whether the injury would have occurred if the patient had not sought treatment; and
(6) Whether the tort alleged was intentional.
The court concluded its analysis by observing that the first issue, whether the plaintiff's allegations of wrongdoing were related to treatment and were caused by dereliction of professional skill, was a key issue that could not be determined on the record before the court. Likewise, many of the other Coleman factors could not be decided on that record. Accordingly, the Richard court remanded the case to the trial court for a determination of whether the allegations of negligence constituted allegations of medical malpractice under Coleman.
In the instant case, there is no dispute that the accident at issue occurred when McLemore was being transferred from his bed to a wheelchair in preparation for lunch. However, we observe that, unlike Richard, the allegations of the plaintiff's petition do not simply encompass the alleged "dropping" of McLemore. As previously noted, the plaintiff's petition additionally stated that after being dropped, McLemore then was placed in his bed "without medical attention." Furthermore, the itemized acts of fault not only include dropping McLemore, but failing to treat him, failing to provide appropriate care under the circumstances and failing to administer proper medical treatment. Thus, the allegations of wrongdoing not only include an unintentional tort concerning the handling of a patient, but also include failure to render appropriate treatment following the incident.
When reviewing the totality of the allegations of the plaintiff's petition in the *1174 case at bar, we conclude that the trial court did not err in sustaining the dilatory exception of prematurity. We recognize that the MMA limits the liability of healthcare providers in derogation of the general rights of tort victims, so that any ambiguities in the MMA should be strictly construed against coverage. Price, supra. Nevertheless, we conclude that the plaintiff's allegations of wrongdoing, especially concerning the failure to render services after the incident, are sufficiently "based on healthcare or professional services rendered or which should have been rendered by a healthcare provider to a patient" so as to require this matter to be presented to a medical review panel. In other words, we find that these allegations fit the first part of the Coleman test which requires a determination of whether the particular wrong is "treatment related" or caused by dereliction of professional skill. We also find that questions concerning the alleged insufficiency of treatment following the incident are questions which suggest that expert medical evidence is required to determine whether the appropriate standard of care was breached.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff, Bentheal L. McLemore.
AFFIRMED.
NOTES
[1] Plaintiff's petition initially refers to the defendant as "Westwood Manor Nursing & Rehabilitation, LLC", and that name appears throughout the record. The correct name of the defendant/facility is Community Care Center of Westwood, LLC. For purposes of this opinion, we will refer to the defendant by the name of record, i.e., Westwood Manor Nursing & Rehabilitation, LLC.