862 So.2d 181 (2003)
Jerry JORDAN, Individually as Agent for Thomas Jefferson Jordan
v.
STONEBRIDGE, L.L.C.
No. 03-CA-588.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 2003.
*182 Emmett, Cobb, Waits & Kessenich, Susan E. Henning, James A. Cobb, Jr., New Orleans, LA, for Appellant.
Rene J. Pfefferle, Chris J. Leblanc, Watson, Blanche, Wilson & Posner, Baton Rouge, LA, for Amicus Curiae.
Michael W. Hill, New Orleans, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Stonebridge, L.L.C., d/b/a Stonebridge Convalescent Center (Stonebridge), appeals from the trial court ruling denying its exception of prematurity.[1] The exception of prematurity was filed against the Plaintiff, Jerry Jordan (Jordan), individually and as agent for Thomas Jordan (Thomas) a resident of Stonebridge, for damages suffered by Thomas when he fell. For the reasons which follow, we affirm.
Thomas is a 62 year old man who is six feet one inch tall and weighs approximately 310 pounds. His mental age is seven years old. As a result of a number of strokes, Thomas has lost the use of his left leg. He was admitted to Stonebridge in March of 1992 and required assistance with all activities of daily living. In December of 2001, at the time of his accident, he received 18 daily medications. Among other things, the Plan of Care for Thomas expressly included the need for two orderlies to assist in moving him from his wheel chair to his shower chair. Jordan alleged that the protocol was very explicit and required two orderlies to move Thomas from his wheel chair to the shower chair while still in his room because the shower room was too narrow for two orderlies to properly support him therein.
Jordan had visited his brother at Stonebridge on December 23, 2001. Upon leaving, *183 he told the staff that he would be back the next morning at about 9:30 A.M. to pick up his brother for the Christmas holidays and requested that he be bathed and dressed at that time. The next morning despite the Plan of Care, Thomas was taken to the shower room in his wheel chair and one orderly attempted to move him from his wheel chair to the shower chair in the narrow shower room, by propping him up against the wall on one leg. Because of his size and instability Thomas fell to the ground, fracturing his right leg. As a result, Thomas was taken to the hospital and thereafter spent two months in a rehabilitation center. Jordan was required to buy several pieces of mobility equipment to assist Thomas. A pressure sore developed from the cast and amputation was contemplated although ultimately not required. Jordan filed suit for damages against Stonebridge.
In response, Stonebridge filed an exception of prematurity, arguing that, since it was a qualified health care provider under La. R.S. 40:1299.41 et seq., the Medical Malpractice Act (the MMA), the case must first proceed before a medical review panel before suit could be filed. Stonebridge originally supported its exception with only a statement from the Patients' Compensation Fund stating that Stonebridge was "an Enrollee under La. R.S. 40:1299.41 et seq."
Jordan opposed the motion, relying on two Louisiana Supreme Court cases, Richard v. Louisiana Extended Care Centers, Inc., 02-0978 (La.1/14/03), 835 So.2d 460 and Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303. Jordan pointed out that Richard held that not every negligent act by a health care provider during a patient's confinement in a nursing home was covered by the MMA. To be covered by the MMA, the negligent act must be related to medical treatment. Coleman sets forth a six part test to determine whether a negligent act is covered by the MMA and the negligent act in this case does not satisfy the Coleman test.
Thereafter, on the eve of the hearing on the exception, Stonebridge filed a reply memorandum arguing, for the first time, that the negligent act in this case did constitute medical malpractice within the Coleman factors. In support of this argument, Stonebridge attached to its memorandum the Plan of Care for Jordan.
Following the hearing, the trial court found that the negligent act of moving Thomas with one orderly, despite the Plan of Care requiring two, was a custodial act and did not constitute medical treatment. Therefore, the trial court ruled that the negligent act was not medical malpractice within the MMA and denied the exception of prematurity. It is from this ruling that Stonebridge appeals.
On appeal both parties present opposing arguments concerning whether the care Thomas was receiving at Stonebridge constituted custodial care and was not covered by the MMA, or constituted medical treatment and, therefore, was covered by the MMA. Both parties cite and rely on Richard and Coleman. Stonebridge argues that there was a detailed protocol on Thomas including the administration of 18 daily medications. Jordan argues that there was no special "treatment" being administered by Stonebridge. Stonebridge simply assisted Thomas in his long term care including his daily activities like bathing and grooming.
In Richard, the Louisiana Supreme Court addressed the question of "whether plaintiff's allegation under the Nursing Home Residents' Bill of Rights, La. R.S. 40:2010.8, et seq. (the `NHRBR') that she was negligently allowed to fall out of her wheel chair at a nursing home must be submitted to a medical review panel pursuant *184 to the provisions of the MMA." The Louisiana Supreme Court concluded that the enactment of the NHRBR was not intended to remove malpractice claims against qualified health care providers from the coverage of the MMA. However, it noted that not all negligent acts by a nursing home constitute medical malpractice under the MMA. To constitute a medical malpractice claim, the alleged negligent act must be related to the nursing home resident's "medical treatment" under Louisiana law "rather than 24-hour custodial shelter." Richard, at 13-14, 835 So.2d at 469. The Richard case was ultimately remanded to the trial court for a determination of whether the allegations that the resident was negligently allowed to fall from her wheelchair constituted allegations of medical malpractice under Coleman.
The Richard court outlined the six part test set out in Coleman to determine whether a negligent act by a health care provider is covered under the MMA:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.
Richard v. Louisiana Extended Care Centers, Inc., 02-0978, p. 13 (La.1/14/03), 835 So.2d 460, 469.
Applying the above Coleman factors to the case before us, we find that the alleged negligent acts complained of herein are not covered under the MMA. The 15 page Plan of Care, attached as an exhibit to the Stonebridge reply memorandum on the exception of prematurity, does not evidence that Thomas was undergoing medical treatment at Stonebridge. Rather, it is a description of how his day-to-day activities are to be handled, including administrating his medication, assisting with going to the bathroom, reminding him to go, bathing three times a week, brushing teeth, and asking him yes or no questions so he responds. It simply does not rise to the level of medical treatment or the requirement of professional skill. The negligent act in this case does not require medical evidence to determine whether the standard of care was breached. The Plan of Care stated that two orderlies were to assist, one on each side, in the transfer of Jordan from his wheelchair. Yet, on the day in question, only one orderly was assisting this 310 pound man who only had use of one leg. No assessment of Thomas' condition was required. The requirement of two orderlies was not judgment-related based on Thomas' condition on any given day. It was a constant requirement because of his size and the uselessness of his left side due to previous strokes. The incident was not related to a physician-patient relationship. It occurred in the routine transfer, by staff, of Thomas from his wheelchair to his shower chair. Therefore, we find that the alleged negligent act herein, mishandling of the patient in a routine transfer from his wheelchair to his shower chair, was in the course of his 24-hour custodial care at Stonebridge rather than part of medical treatment and does not come under the MMA.
Accordingly, for the reasons stated above, we affirm the trial court ruling denying the exception of prematurity filed by Stonebridge. The case is remanded for *185 further proceedings. Costs of appeal are assessed to Stonebridge.
AFFIRMED.
CHEHARDY, J., dissents.
CHEHARDY, J., dissents.
I respectfully disagree with the majority and would reverse the trial court's denial of defendant's exception of prematurity. I believe the allegations in the petition that commenced this lawsuit are claims of medical malpractice against a healthcare provider, which should have been submitted to a medical review panel before filing suit.
In Louisiana, "malpractice" is defined as:
any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers....
La. R.S. 40:1299.41(A)(8); Richard v. Louisiana Extended Care Centers, 02-0978 (La.1/14/03), 835 So.2d 460, 468; Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, 315.
In this case, the nursing home's alleged negligence occurred during a wheelchair transfer of its resident, Mr. Jordan. Clearly, the nursing home's actions occurred during the "handling of a patient, including loading and unloading of a patient," which comes directly under the statutory definition of "malpractice." As noted in Richard, supra, however, even though the alleged act involved the handling of a patient, it does not necessarily constitute medical malpractice. Richard, 835 So.2d at 468.
In Coleman, 813 So.2d at 315-316, the Louisiana Supreme Court held that the negligent act must be related to medical treatment to be covered under the Louisiana Medical Malpractice Act ("MMA"). The Coleman court set forth a six-part test to determine whether a negligent act by a health care provider is covered under the MMA: (1) whether the particular wrong is treatment related' or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.
The first Coleman factor is whether plaintiffs' allegations of wrongdoing are related to treatment and are caused by a dereliction of professional skill. In the plaintiffs' petition, they clearly allege that the lack of skill evidenced by the nursing home's staff during Mr. Jordan's wheelchair transfer was the cause of Mr. Jordan's fall. Further, the attempted wheelchair transfer was to enable a nursing home employee to bathe Mr. Jordan, who was a very large man with a neurological defect, limited use of his left side, and incontinence. In this case, showering was required as part of Mr. Jordan's "plan of care" to prevent "skin breakdown" in connection with his incontinence. Thus, the alleged incident was also "related to treatment."
The second Coleman factor is whether the wrong requires expert medical evidence *186 to determine whether the appropriate standard of care was breached. Here, expert medical testimony should be heard on the standard of care in handling and transfer of patients weighing over 300 pounds.
The third Coleman factor is whether the pertinent act or omission involved assessment of the patient's condition. In this case, plaintiffs allege that the nursing home's staff failed to properly assess Mr. Jordan's condition before and during the wheelchair transfer, which caused his fall and resultant leg fracture.
The fourth Coleman factor is whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform. Stonebridge, at all times pertinent to this, was a licensed nursing home facility. Here, plaintiffs' allegations regarding failure to hire, train, and retain competent staff satisfy this factor.
The fifth Coleman factor is whether the injury would have occurred if the patient had not sought treatment. Here, the plaintiffs assert that Mr. Jordan's broken leg was the result of the alleged inadequate care and treatment, thus alleging a cause-and-effect relationship between the alleged failure of care and the injuries. Finally, plaintiffs do not allege that any of defendants' actions were intentional, thus satisfying the final Coleman factor, whether the tort alleged was intentional.
After reviewing plaintiffs' allegations, I find that the trial court erred in finding that the allegations do not fit within the statutory definition of medical malpractice. Accordingly, I would reverse the judgment denying the exception of prematurity.
NOTES
[1] It has been held that the denial of an exception of prematurity based on coverage by the Medical Malpractice Act is an interlocutory appealable issue. Prisk v. Palazzo, 93-2156 (La.App. 4th Cir.1/19/96), 668 So.2d 415, writs denied, 96-0437 (La. 4/8/96), 671 So.2d 335. It has also been held that such an issue should be considered under appellate supervisory jurisdiction. Evans v. Charity Hospital in New Orleans, 01-0507 (La.4/20/01), 790 So.2d 8. Since this case was lodged as an appeal, we will consider it as such.