965 So.2d 448 (2007)
Dr. John MUNSON, Bevil Knapp and Ron Knapp, Individually and on Behalf of the Estate of Mildred Lucile Munson
v.
LAKEWOOD QUARTERS LIMITED PARTNERSHIP, B.B.R.C. Investments, L.L.C., and Millenium Management, LLLP, d/b/a Lakewood Quarters Rehabilitation and Nursing Center.
No. 2006 CA 1428.
Court of Appeal of Louisiana, First Circuit.
July 18, 2007.
Russell Ramsey, New Orleans, Counsel for Plaintiffs/Appellants, Dr. John Munson, Bevil Knapp and Ron Knapp.
Paul Lauve, Baton Rouge, Counsel for Defendant/Appellee, Lakewood Quarters Limited Partnership.
*449 Before: CARTER, C.J., WHIPPLE, GUIDRY, McDONALD, and McCLENDON, JJ.
WHIPPLE, J.
In this action for damages for the injury and death of a nursing home resident, the trial court maintained the defendant's exception of prematurity, finding that the claim had to be first submitted to a medical review panel pursuant to the Louisiana Medical Malpractice Act, LSA-R.S. 40:1299.41 et seq. ("the MMA"). For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Dr. John Munson, Bevil Knapp and Ron Knapp, filed a suit for damages in the district court, individually and on behalf of the Estate of Mildred Lucile Munson ("Ms. Munson"). Plaintiffs alleged that Ms. Munson had been a resident of Lakewood Quarters Rehabilitation & Nursing Center and/or Lakewood Quarters Assisted Living, when she was injured on June 12, 2004. According to the petition, Ms. Munson was known to be disabled and in need of close supervision and care. The petition further alleged that on June 12, 2004, an employee of Lakewood Quarters Rehabilitation & Nursing Center and/or Lakewood Quarters Assisted Living attempted to transport Ms. Munson from her room to the dining room by wheelchair. However, according to the petition, the employee failed to adequately secure Ms. Munson, who was discovered on the floor of her room, having suffered severe injuries to her cervical spine. Plaintiffs further alleged that Ms. Munson died as a direct result of these injuries.
Lakewood Quarters Limited Partnership, owner of Lakewood Quarters Assisted Living, then filed a dilatory exception raising the objection of prematurity.[1] In its exception, Lakewood Quarters Assisted Living contended that Ms. Munson was a resident of the assisted living facility and not the nursing home. It further contended that, as evidenced by the Certificate of Enrollment filed with the exception, it was a qualified health care provider at the time of the alleged negligence and that, as such, plaintiffs were required to first submit their claim to a medical review panel pursuant to LSA-R.S. 40:1299.47, prior to commencing any court proceedings.[2]
Following a hearing on the matter, the district court maintained the exception of prematurity and dismissed plaintiffs' suit without prejudice. From this judgment, plaintiffs appeal.

DISCUSSION
The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116, 119. Accordingly, a malpractice claim against a private qualified health care provider is subject *450 to dismissal on a timely filed exception of prematurity if such claim has not first been screened by a pre-suit medical review panel. LSA-R.S. 40:1299.47(A) & (B)(1)(a)(i); Spradlin, 758 So.2d at 119. The burden of proving prematurity is on the exceptor, in this case, the defendant health care provider. Therefore, defendant must show that it is entitled to a medical review panel. Williamson v. Hospital Service District No. 1 of Jefferson, XXXX-XXXX (La.12/1/04), 888 So.2d 782, 785.
On appeal, plaintiffs argue that because Ms. Munson was not receiving medical care or treatment for any specific condition at the time of her injury, their claims are not governed by the MMA and, therefore, the prior submission of these claims to a medical review panel was not required. In its reasons for judgment, the district court found that because the definition of "malpractice" included any tort based on healthcare or professional services rendered, including the loading and unloading of the patient, the allegations of plaintiffs' petition were covered by the MMA.
However, as set forth in the Louisiana Supreme Court's opinion in Richard v. Louisiana Extended Care Centers, Inc., XXXX-XXXX (La.1/14/03), 835 So.2d 460, 467-468, the fact that the alleged negligence involved the loading or unloading of a nursing home resident is not enough to alone establish that the negligence constitutes malpractice mandating the application of the MMA.
In Richard, a nursing home resident, who was a ninety-two-year-old double amputee, was alleged to have been negligently allowed to fall out of her wheelchair, and the court addressed whether this allegation was a medical malpractice claim under the MMA. In its analysis, the Supreme Court held that because the MMA limits the liability of health care providers in derogation of the general rights of tort victims, any ambiguities in the MMA should be strictly construed against coverage. Richard, 835 So.2d at 468. As noted by the court in Richard, the MMA defines "malpractice" as:
[A]ny unintentional tort or breach of contract based on health care or professional services rendered or which should have been rendered by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.[3]
LSA-R.S. 40:1299.41(A)(8); Richard, 835 So.2d at 468. Next, the court acknowledged that the nursing home's staff's alleged act of negligently allowing the nursing home resident to fall from her wheelchair clearly involved the "handling of a patient, including loading and unloading of a patient," which came directly under the MMA's definition of "malpractice." However, the court then quoted from Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169, 1172-1173, as follows:
While clearly an act of malpractice can occur in the rendition of professional *451 services, the patient must still be in the process of receiving "health care" from the doctor or hospital when the negligent rendition of professional services occurs.
Richard, 835 So.2d at 468.
The Supreme Court further observed that in the case of a nursing home, a resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. Thus, the Court concluded, while the alleged act in Richard did involve the handling of a patient under LSA-R.S. 40:1299(A)(8), it did not necessarily constitute medical malpractice unless the negligent act was related to medical treatment. Richard, 835 So.2d at 468.
The Richard court cited with approval the following six-part test of Coleman v. Deno, XXXX-XXXX (La.1/25/02), 813 So.2d 303, 315-316, for determining whether a negligent act by a health care provider is covered under the MMA: (1) Whether the particular wrong is "treatment related" or caused by dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional. Richard, 835 So.2d at 468-469.
The court concluded its analysis by observing that the first issue, whether the plaintiff's allegations of wrongdoing were related to treatment and were caused by dereliction of professional skill, was a key issue that could not be determined on the record before the court. Specifically, the court stated that it could not determine from the record whether the resident was placed in the nursing home for any specific treatment of a particular condition, rather than for 24-hour custodial shelter, or whether the resident was on her way to or from any medical treatment when the accident occurred. Richard, 835 So.2d at 469. The court further found that many of the other Coleman factors could not be decided on the record before it. Accordingly, the Richard court remanded the case to the trial court for a determination of whether the allegations of negligence constituted allegations of medical malpractice under the Coleman test. Richard, 835 So.2d at 469.
After the Richard opinion was rendered, other cases have dealt with the issue of whether a fall from a wheelchair or while being transferred or handled constituted allegations of medical malpractice, requiring initial review by a medical review panel. In Pender v. Natchitoches Parish Hospital, XXXX-XXXX (La.App. 3rd Cir.5/7/03), 844 So.2d 1107, 1108, a long-term care unit patient allegedly fell from her wheelchair when left alone and unrestrained, struck her head and died. On remand from the Supreme Court, the Third Circuit Court of Appeal considered whether these allegations constituted medical malpractice in light of the Supreme Court's pronouncements in Richard. The plaintiffs therein had alleged that the decedent had physical problems, including challenges with balance, a history of falling, a history of mental confusion, and residual left-sided weakness and had further alleged that the need for adequate restraints and precautions had been reiterated by the plaintiffs to the hospital. Pender, 844 So.2d at 1109. Given these allegations alone, the Third Circuit concluded, as did *452 the Supreme Court in Richard, that the record was inadequate to make a determination of whether the alleged negligence constituted medical malpractice under the Coleman factors and, thus, whether the matter had to be first submitted to a medical review panel. Accordingly, the appellate court remanded the matter to the district court for a full evidentiary hearing on the applicability of the Coleman factors to the particular facts of that case. Pender, 844 So.2d at 1110.
In McLemore v. Westwood Manor Nursing and Rehabilitation, L.L.C., 37,450 (La.App. 2nd Cir.8/20/03), 852 So.2d 1170, 1171, a nursing home resident was allegedly dropped by certified nursing assistants and sustained a severely broken leg, but was then placed in his bed without medical attention. In analyzing the allegations of the petition in light of the Coleman factors, the Second Circuit Court of Appeal concluded that these allegations did constitute allegations of negligence related to medical treatment. The court distinguished the case before it from Richard, noting that the petition did not simply encompass the alleged "dropping," but also further alleged that the resident was then placed in his bed "without medical attention." The court further noted that the petition included allegations of failure to treat the resident, failure to provide appropriate care under the circumstances, and failure to administer proper medical treatment. McLemore, 852 So.2d at 1173. Thus, the court concluded, the allegations of the petition were of negligence that was sufficiently treatment-related or caused by dereliction of professional skill as to require that the matter be first presented to a medical review panel. McLemore, 852 So.2d at 1174.
In Jordan v. Stonebridge, L.L.C., 03-588 (La.App. 5th Cir.11/25/03), 862 So.2d 181, 182-183, writ denied, XXXX-XXXX (La.3/19/04), 869 So.2d 851, a three-hundred-ten-pound, mentally handicapped resident of a convalescent center, who had no use of his left leg and required assistance with all activities of daily living, fell and broke his leg when an orderly attempted to transfer him from his wheelchair to a shower chair. In applying the Coleman factors to determine whether the alleged negligence constituted medical malpractice, the Fifth Circuit Court of Appeal concluded that the actions of the orderly were not treatment-related and did not require professional skill. The court noted that the resident's plan of care, which required two orderlies to handle the transfer from the wheelchair to the shower chair, did not evidence that the resident was undergoing medical treatment, but, rather, merely described how his day-to-day activities were to be handled. The court determined that the alleged negligence was not medical malpractice, and, thus, the plaintiff was not required to submit the claim to a medical review panel. Jordan, 862 So.2d at 184.
In Williamson, a patient was being pushed in a wheelchair upon discharge from the hospital when a wheel fell off the wheelchair, causing her to fall. Williamson, 888 So.2d at 783-784. The Louisiana Supreme Court applied the Coleman factors and concluded that the alleged wrong was neither treatment-related nor caused by a dereliction of professional skill within the meaning of the MMA.[4] Thus, the court concluded that the claims did not fall within the provisions of the MMA and the plaintiff was not required to submit the claim to a medical review panel. Williamson, 888 So.2d at 789-790.
*453 Finally, in Jackson v. DeSoto Retirement and Rehabilitation Center Inc., 40,482 (La.App. 2nd Cir.12/14/05), 917 So.2d 727, 728-729, a nursing home resident allegedly fell or was dropped, resulting in a fractured hip and complications which allegedly led to his death. The record revealed that the nursing home patient suffered from weakness and dementia, required assistance with activities of daily living and personal hygiene, and was at risk for falls. The Second Circuit Court of Appeal, in applying the Coleman factors, concluded that the case was governed by the MMA. Specifically, the court determined that the degree of assistance the nursing home resident needed with daily activities was a matter for the nursing home to determine by its expertise. The court further found that expert medical opinion would be required to determine if the nursing home had breached the standard of care. Thus, the court maintained the nursing home's exception of prematurity on the basis that the matter had to first be presented to a medical review panel. Jackson, 917 So.2d at 733.
In reviewing the pertinent jurisprudence following Richard, as set forth above, we agree with the Second Circuit that McLemore was clearly distinguishable from Richard, in that the allegations in McLemore involved more than the dropping of the resident in an attempted transfer from the bed to a wheelchair and specifically included allegations of failure to provide appropriate care or to administer proper medical treatment. These additional allegations readily bring the claim within the ambit of medical malpractice and the pre-screening requirements of the MMA. See McLemore, 852 So.2d at 1173-1174. Additionally, we agree that the facts in Williamson were somewhat easily removed from the realm of medical malpractice in that the situation involved the hospital's alleged failure to properly repair a wheelchair. Williamson, 888 So.2d at 789-790.
However, the results reached in the Jordan and Jackson cases appear at first glance to be somewhat inconsistent. Both cases involved nursing home residents who suffered from numerous disabilities and required assistance with activities of daily living. See Jackson, 917 So.2d at 733; Jordan, 862 So.2d at 182. Nonetheless, while the Second Circuit determined that the resident's fall was governed by the MMA. in Jackson, the Fifth Circuit in Jordan determined that the resident's fall therein was not covered by the MMA. See Jackson, 917 So.2d at 733; Jordan, 862 So.2d at 184.
However, one distinguishing fact that the Jordan court seemed to rely upon was that the resident in that case had a specific plan of care which detailed how the resident's day-to-day activities were to be handled. The court noted that the orderly's alleged failure to carry out activities as specified in the plan of care simply did not rise to the level of medical treatment or the requirement of professional skill. Thus, the court concluded that the mishandling of the resident in a routine transfer from his wheelchair to his shower chair occurred in the course of his 24-hour custodial care at the nursing home rather than as a part of medical treatment. As such, the court held that the claim was not governed by the MMA.[5]Jordan, 862 So.2d at 184.
*454 In the instant case, the allegations of the petition are simply that Ms. Munson, who was disabled and in need of close supervision and care, fell from her wheelchair when an employee of defendants, attempting to transport Ms. Munson from her room to the dining area, failed to adequately secure her in her wheelchair. Based on these allegations alone, we conclude, as did the Supreme Court in Richard and the Third Circuit in Pender, that the record before us is inadequate to establish that the alleged negligence was related to treatment or was caused by a dereliction of professional skill and, thus, constituted medical malpractice. See Richard, 835 So.2d at 469, and Pender, 844 So.2d at 1110. As in the Richard case, neither the petition nor the record before us discloses whether Ms. Munson was placed in the nursing home for any specific treatment of a particular condition, rather than 24-hour custodial shelter, or that Ms. Munson was on her way to or from any medical treatment when the accident occurred. Richard, 835 So.2d at 469. Accordingly, we must conclude that, on the record before us, Lakewood Quarters Limited Partnership has failed to carry its burden of proving that this claim is governed by the MMA and that it is accordingly entitled to a medical review panel. See Williamson, 888 So.2d at 785.
For these reasons, the district court's judgment maintaining the exception of prematurity filed by Lakewood Quarters Limited Partnership must be reversed. This case is remanded for a full evidentiary hearing on whether the alleged negligence herein constitutes medical malpractice under Coleman. See Richard, 835 So.2d at 469, and Pender, 844 So.2d at 1110.

CONCLUSION
For the above and foregoing reasons, the April 4, 2006 judgment, maintaining the exception of prematurity and dismissing plaintiffs' claims without prejudice, is reversed. This matter is remanded for further proceedings consistent with the views expressed herein. Costs are assessed against Lakewood Quarters Limited Partnership
REVERSED AND REMANDED.
McDONALD, J., dissents and assigns reasons.
GUIDRY, J., dissents in part and concurs in part and assigns reasons.
CARTER, C.J., concurs.
McCLENDON, J., concurs without reasons.
McDONALD, J. dissenting:
While the majority is correct in its interpretation of Richard, most of the observations are dicta. In Richard the supreme court's primary focus was determining whether a claim against a Medical Malpractice Act (MMA) qualified nursing home had to be brought pursuant to the provisions of the MMA or could be brought under the Nursing Home Residents' Bill of Rights (NHRBR). The court cited varying views by different courts and "harmonized" the two. Having decided *455 Richard, the supreme court has settled this issue. The majority points out that Jackson and Jordan seem to be in conflict. Then distinguishing Jordan, the majority fails to further address Jackson.
I believe the facts as alleged in the present case sound in tort just as the petition in Jackson. As the court pointed out in Jackson, "Regardless of how the plaintiff has styled his action, it is readily apparent that it is an action in medical malpractice." Jackson at 732. Paragraph XIII of the present petition asks for much of the same relief as requested by the plaintiff in Jackson. However, the Jackson court found that the patient's nursing home records indicated that he suffered from weakness and dementia, required supervision and assistance with daily living activities, and was at risk for falls. Paragraph VIII of the petition claims that Ms. Munson "was known to be disabled and in need of close supervision and care . . ." She was found on the floor of her room just as the patient in Jackson was discovered lying on the floor in his bathroom. The facts in this case seem almost exactly like those in Jackson. As that court pointed out:
Using the factors set forth in Coleman, supra, the totality of these circumstances tends to show that the degree of care that was or should have been provided for Mr. Edwards is a question whose answer requires expert medical knowledge. The medical records indicate that one of the reasons Mr. Edwards was in DeSoto Retirement was because he needed assistance with various daily activities, and the degree of assistance was a matter for DeSoto Retirement to determine per its expertise.

Jackson v. DeSoto at 733.
Similarly, Ms. Munson was disabled and in need on close supervision and care. Whether Lakewood provided the degree of care that was necessary for Ms. Munson is a question requiring expert medical knowledge.
For these reasons I respectfully dissent.
GUIDRY, J., dissents in part and assigns reasons.
GUIDRY, J., dissenting in part.
I respectfully disagree with the majority's decision insofar as it remands this matter for the holding of another evidentiary hearing on the exception. The exceptor has already had an opportunity to present the requisite evidence to sustain its burden of proof at the first hearing.
NOTES
[1] The named defendants were: Lakewood Quarters Limited Partnership; B.B.R.C. Investments, L.L.C.; Millenium Management, LLLP; Lakewood Quarters Assisted Living, L.P.; and Lakewood Quarters L.L.P. However, the exception of prematurity was filed only by Lakewood Quarters Limited Partnership, as owner of Lakewood Quarters Assisted Living.
[2] We note that despite Lakewood Quarters Assisted Living's assertion that Ms. Munson was a resident of the assisted living facility and not the nursing home, the Certificate of Enrollment filed in the record lists Lakewood Quarters Assisted Living as a nursing home.
[3] The definition of "malpractice" quoted above differs slightly from the definition quoted in Richard because the definition was amended by Louisiana Acts 2001, No. 108, § 1, which was in effect at the time of the alleged negligent acts at issue. The definition of "malpractice" was again amended by Louisiana Acts 2006, No. 694, § 1, after the alleged negligence herein.
[4] The court also concluded that the remaining Coleman factors did not support a finding of medical malpractice. Williamson, 888 So.2d at 790-791.
[5] We note that in a case factually distinguishable from the present case, this court in McKnight v. D & W Health Services, Inc., 2002-2552 (La.App. 1st Cir.11/7/03), 873 So.2d 18, 20, addressed whether the death of a nursing home resident who was allowed to wander off the premises and died as a result of injury, heat exhaustion and exposure, constituted a claim for malpractice under the MMA. This court noted that the decedent was a resident of the nursing home because he was generally in a confused state and was physically unable to care for himself. Thus, applying Richard and Coleman, this court determined that the allegations supported the conclusion that the negligence was treatment-related in that "the care of physically and mentally incapacitated patients is the type of health care for which nursing homes are generally dedicated" and that a claim based on failure to provide sufficient treatment is clearly linked to treatment. McKnight, 873 So.2d at 23.