862 So.2d 1061 (2003)
Veda Beth TERRY and Carol Ann Flowers, Plaintiffs-Appellants,
v.
RED RIVER CENTER CORPORATION d/b/a Riverview Care Center, Defendant-Appellee.
No. 37,991-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
*1062 Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, for Appellants.
Lunn, Irion, Salley, Carlisle & Gardner by Ronald E. Raney, Shreveport, for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
STEWART, J.
Plaintiffs appeal the trial court's grant of the defendant, Riverview Care Center's ("Riverview"), exception of prematurity. For the reasons expressed herein, we reverse and remand.

FACTS
Doris Lee ("Lee"), the mother of the plaintiffs, was a resident of the Riverview Care Center ("Riverview") in Bossier City. Lee had suffered health problems for many years and in a directive executed on August 13, 1996, she stated in part:
If at any time I should have an incurable injury, disease, or illness, or be in a continual comatose state with no reasonable chance of recovery, certified to be a terminal and irreversible condition by two physicians who have personally examined me, one of whom shall be my attending physician, and the physicians have determined that my death will occur whether or not life-sustaining procedures are utilized and where the application of life-sustaining procedures would *1063 serve only to prolong artificially the dying process, I direct that such procedures be withheld or withdrawn and that I be permitted to die naturally with only the administration of medication necessary to provide me with comfort care.
She also executed a second directive on June 8, 2001, which stated in part:
Comfort care will be provided which includes relief of pain, oral fluids, positioning, mouth care, treatment of fever, oxygen administration and suctioning.

* * *

Do not use a respirator.

Do not use dialysis.

Do not use feeding tube.

* * *

Do not use CPR.
Both directives were contained in Lee's chart at Riverview. On April 28, 2002, between 9:30 p.m. and 10:00 p.m., employees of Riverview found Lee in her room. They described her as "unresponsive" and stated that they "were unable to stimulate her." In opposition to her directives, these employees instituted efforts to revive Lee, including calling EMT's who began CPR, intubation, manual ventilation, chest compression, an EKG, and the insertion of a tube down Lee's left nostril. These procedures allegedly caused Lee to swell beyond recognition until her daughter, Veda Beth Terry arrived. Afterward, life support was discontinued, and Lee died.
Lee's children brought suit under the Nursing Home Residents Bill of Rights ("NHRBR"), La. R.S. 40:2010.8, et seq., alleging that Riverview's failure to follow Lee's directives caused her and her children to suffer damages. Riverview filed an exception of prematurity contending that this matter should go before a medical review panel before coming to trial because the matters are covered under the Medical Malpractice Act ("MMA"). The trial court agreed with Riverview and granted the exception, and this appeal ensued.

DISCUSSION
Exception of Prematurity
The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for decision by a medical review panel before filing suit against the provider. Spradlin v. AcadiaSt. Landry Medical Foundation, 98-1977 (La.2/29/00), 758 So.2d 116. Accordingly, a claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been screened by a pre-suit medical review panel. Id. Nursing homes are defined as "hospitals" for the purposes of falling under the ambit of the MMA. La. R.S. 40:1299.41A(4).
Medical Malpractice
The plaintiffs assert that the trial court erred in granting Riverview's exception of prematurity because the conduct involved is not covered under the MMA, but is governed by Louisiana negligence and breach of contract principles. We find that the recent case of Richard v. Louisiana Extended Care Centers, 02-0978 (La.1/14/03), 835 So.2d 460, provides guidance for determining whether this case is a medical malpractice case or a simple breach of contract or negligence matter. Specifically, the Richard court stated:
"While clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving `health care' from the doctor or hospital when the negligent rendition of professional services *1064 occurs. [Citation omitted] This means that the act or omission must have occurred `during the patient's medical care, treatment or confinement.'"
In contrast, Riverview asserts that the trial court was correct in granting its exception of prematurity and finding that the plaintiffs' claims fall under the MMA, thus requiring the plaintiffs to bring their case before a medical review panel prior to bringing suit in the district court based on the reasoning of Richard, supra.
As a threshold matter, Riverview contends that the allegations of the plaintiffs in the pleading are enough to require that this case be governed by the MMA. Article 13 of the original petition alleges in part:
(a) Failure to provide adequate and appropriate health care and protective and supportive services; (Emphasis theirs).
(c) Failure to monitor Doris Lee adequately.
While denying the substance of these allegations, Riverview avers that the plaintiffs' own allegations assert that it was in the process of providing "health care" to Lee when the alleged damages occurred.
However, while making no determination of whether those allegations cited by Riverview falls under the ambit of the MMA, we find that the issue before this court is whether Riverview's conduct is actionable under the NHRBR rather than the MMA. Although Richard limits allegations that can be brought directly to the district court pursuant to the NHRBR, there still remains a cause of action separate and distinct from the MMA for the failure of nursing homes to treat its residents with dignity and personal integrity. Hebert v. Chateau Living Center, LLC, (La.App. 5 Cir. 9/30/03), 857 So.2d 1183.
The record shows that the Riverview employees found Lee to be unresponsive to stimulation. Instead of calling 911 and initiating measures that were in direct violation of the directive, they were simply supposed to respect and follow the instructions that were on her chart which directed them not to perform CPR.
In analyzing whether the conduct at issue constitutes medical treatment for the purpose of being covered by the MMA, the Richard court cited with approval the six-part test of Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303, for determining whether a negligent act by a health care provider is covered under the MMA, to wit:
1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
3) whether the pertinent act of omission involved the assessment of the patient's condition;
4) Whether an incident occurred ... within the scope of activities which a hospital is licensed to perform;
5) whether injury would have occurred if the patient had not sought treatment; and
6) whether the alleged tort was intentional.
Our analysis of the facts of this case leads us to conclude that the problems Lee experienced were not "treatment related" because the problems came as a result of Riverview's failure to abide by Lee's wishes not to be resuscitated by CPR. The fact that they "treated" her after they negligently acted does not bring this case under the MMA. Secondly, the directive stated that Riverview was not to perform CPR, and it is clear that it is not necessary to have a medical expert to determine whether the directive was ignored. There *1065 is no evidence to support the idea that Riverview's failure to abide by Lee's wishes came as a result of an assessment of her condition. There is no dispute that nursing homes are covered under the MMA, but we are not deciding whether Riverview performed a medical task and fell below the standard of care. Lastly, the plaintiffs do not contend that an intentional tort occurred; therefore, the sixth factor is inapplicable to this matter.
The NHRBR was written in contemplation of issues like those before the court in the instant case. We conclude that the conduct at issue does not fall under the MMA; thereby, obviating the need to have this matter reviewed before a medical review panel.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is reversed. Costs of this appeal are assessed to Riverview.
REVERSED AND REMANDED.