942 So.2d 1238 (2006)
Veda Beth TERRY and Carol Ann Flowers, Plaintiffs-Appellants
v.
RED RIVER CENTER CORPORATION d/b/a Riverview Care Center, Defendant-Appellee.
No. 41,473-CA.
Court of Appeal of Louisiana, Second Circuit.
November 15, 2006.
*1240 Peters, Ward, Bright & Hennessy, by J. Patrick Hennessy, Shreveport, for Appellants.
Lunn, Irion, Salley, Carlisle & Gardner, by Ronald E. Raney, Shreveport, for Appellee.
Before BROWN, STEWART and DREW, JJ.
STEWART, J.
Veda Beth Terry and Carol Ann Flowers, appeal the trial court's denial of their action against Riverview Care Center for its alleged failure to follow the advance directive of their mother Doris Lee, who died while in the care of Riverview. Finding no merit in the plaintiffs' contentions, we affirm the ruling of the trial court.

FACTS
Plaintiffs are the surviving daughters of Doris Lee. Doris Lee died at Riverview Care Center ("Riverview"). Ms. Lee died at Riverview on April 28, 2002. However, she was revived through the efforts of the *1241 EMTs called by request of the defendants and taken to Willis Knighton-Pierremont where resuscitative efforts were discontinued in accordance with the advance directive found by the emergency room physicians in Doris Lee's chart from Riverview. Lee was then allowed to die naturally at 11:36 p.m.

DISCUSSION
Standard of Review
Our review of the factual findings in this case are governed by the manifest error/clearly wrong standard of review. It is a well-settled principle that an appellate court may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly wrong. Rosell, supra; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra. Where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
The reviewing court must always keep in mind that, if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that, if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong, but whether the factfinder's conclusions were reasonable. Stobart, supra; Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305.
Statutory Background
Twenty years ago, the legislature enacted La. R.S. 40:1299.58.1 et seq., recognizing the right of a person to refuse medical care and to declare that refusal in advance of a circumstance when the person might be unable to make the decision herself. In the intervening years, no reported Louisiana decisions have interpreted these provisions to determine the validity of a written declaration.
The legislative purpose, findings and intent are stated in R.S. 40:1299.58.1:
A. Purpose and findings. (1) The legislature finds that all persons have the fundamental right to control the decisions relating to their own medical care, including the decision to have life-sustaining procedures withheld or withdrawn in instances where such persons are diagnosed as having a terminal and irreversible condition.
(2) The legislature further finds that the artificial prolongation of life for a person diagnosed as having a terminal and irreversible condition may cause loss of individual and personal dignity *1242 and secure only a precarious and burdensome existence while providing nothing medically necessary or beneficial to the person.
(3) In order that the rights of such persons may be respected even after they are no longer able to participate actively in decisions concerning themselves, the legislature hereby declares that the laws of the state of Louisiana shall recognize:
(a) The right of such a person to make a declaration instructing his physician to withhold or withdraw life-sustaining procedures or designating another to make the treatment decision and make such a declaration for him, in the event he is diagnosed as having a terminal and irreversible condition; and
(b) The right of certain individuals to make a declaration pursuant to which life-sustaining procedures may be withheld or withdrawn from an adult patient who is comatose, incompetent, or otherwise physically or mentally incapable of communication, or from a minor, in the event such adult patient or minor is diagnosed and certified as having a terminal and irreversible condition.
(4) In furtherance of the rights of such persons, the legislature finds and declares that nothing in this Part shall be construed to be the exclusive means by which life-sustaining procedures may be withheld or withdrawn, nor shall this Part be construed to require the application of medically inappropriate treatment or life-sustaining procedures to any patient or to interfere with medical judgment with respect to the application of medical treatment or life-sustaining procedures.
B. Intent. (1) The legislature intends that the provisions of this Part are permissive and voluntary. The legislature further intends that the making of a declaration pursuant to this Part merely illustrates a means of documenting a patient's decision relative to withholding or withdrawal of medical treatment or life-sustaining procedures.
(2) It is the intent of the legislature that nothing in this Part shall be construed to require the making of a declaration pursuant to this Part.
(3) It is the intent of the legislature that nothing in this Part shall be construed to be the exclusive means by which life-sustaining procedures may be withheld or withdrawn, nor shall this Part be construed to require the application of medically inappropriate treatment or life-sustaining procedures to any patient or to interfere with medical judgment with respect to the application of medical treatment or life-sustaining procedures.
There were three advance directives purportedly executed by Doris Lee that the trial court reviewed in its determination of whether Riverview failed to follow Lee's wishes and is responsible for her alleged pain and suffering. Doris Lee had executed three advance directives instructing health care professionals that she not be resuscitated.
The first form was executed in 1996, which the trial court correctly determined was invalid on its face. The main and most obvious difficulty for the plaintiffs' claim as to the 1996 DNR is that it was not, as required by its own terms, confirmed through the signatures of two physicians. This is shown simply by looking at the fact of the physician signature page which appears in the Joint Exhibit at page 8-only Dr. Reilly is shown as having *1243 signed. By its own language, there is absolutely no language in the 1996 DNR that requires nurses or a nursing home to rely upon its purported declaration. Furthermore, the directive was executed six years before Mrs. Lee's death in another facility. The record also demonstrates that Mrs. Lee had reached the brink of death on several occasions, but to the surprise of the children, she survived.
The second form was executed in 2001, and the trial court found that it contained contradictory terms. The form indicated that medical personnel should "admit (Ms. Lee) to ICU" but contained an instruction to not use CPR. The trial court found that this contradiction invalidated this directive. While this Court does not agree with the proposition that the form contained irreconcilably contradictory terms because it says "admit to ICU" but "do not use CPR," that conclusion does not require a reversal because the record does not demonstrate that Riverview had this particular directive in its charts for Mrs. Lee at the time of her death.
The 2002 form was not signed by Mrs. Lee. Rather, it was signed by Ms. Flowers. There is nothing in the record to support that Ms. Lee had conferred such authority upon Ms. Flowers.
On appeal, plaintiffs erroneously argue that the 1996 and 2002 directives can be combined to meet the two signature requirement. This argument is completely without legal support. If the plaintiffs' argument were to be accepted, then hospital and nursing home patients would be simply allowed to die because it is more convenient to do so rather than address the condition at hand. The record was clear that Mrs. Lee had been under the care of several physicians and had several close calls with death, but had continued to survive. Calling 911 was not a violation of the DNR by Riverview as such a call would not amount to heroic measures in the purview of a nursing home facility's duty of care to its patients. Therefore, we find no error in the trial court's conclusion that Riverview complied with her wishes and did not violate the DNR.
Plaintiffs also argue that the trial court erred by finding that Mrs. Lee wished to die in a hospital. This contention is without merit. While is it true that there is no direct statement in the evidence that Riverview had been told of Mrs. Lee's wish to die in the hospital, it is likewise true that there is no evidence to the contrary in the testimony or the various DNRs. Even if this were true, then Mrs. Lee's wish to die in the hospital was ultimately fulfilled and that should end the inquiry. Lastly, the plaintiffs assert that 911 should not have been called because Balentine was stated as the ambulance service of preference. However, preference does not mean "requirement." Therefore, this assignment is without merit.
Expert Testimony
Plaintiffs also argue that the defense expert, Dr. David Henry, should not have been allowed to testify at trial as to the interpretation of the various DNR forms at issue. At the outset of this discussion, however, it must be stated that Dr. Henry's testimony encompassed more than the interpretation of advance directives, but included topics such as standards of nursing conduct, explanation of medical terms and conditions and other medical issues  issues that would require expert testimony. Plaintiffs' reliance on Terry v. Red River Corporation, 37,991 *1244 (La App.2d Cir. 12/10/03), 862 So.2d 1061 is misplaced. Finally, it should be noted that the plaintiffs attempt to argue the merits of the case in this assignment rather than whether certain aspects of the expert testimony should be inadmissible. As shown by the testimony of Dr. Henry, Mrs. Lee became a patient of the EMS crew upon their arrival at the nursing home and at that moment ceased to be the patient of Riverview until such time as she might have returned. If plaintiffs are truly relying solely upon the 1996 DNR, then the only issue presented is who should be called upon to determine whether Mrs. Lee's condition was imminently terminal, and whether or not life sustaining measures were utilized. There is nothing in the 1996 DNR which required that active treatment cease merely because only a pulse, not respiration, can be measured. At any rate, such decision would clearly involve the type of medical judgment contemplated by La. R.S. 40:1299.58.1.
Damages and Attorney Fees
There can be no attorney fees awarded, because there has been no breach of the standard of care nor any other basis of liability established on the part of Riverview. Additionally the matter falls under the Medical Malpractice Act, precluding any such award. Thus, this assignment is without merit.
Contrary to the plaintiffs' contentions, this matter is not actionable under the Nursing Home Residents' Bill of Rights (NHRBR). La. R.S. 40:1299.41 et seq. When Mrs. Lee was found unresponsive on April 28, 2002, medical knowledge was required in order to distinguish such from mere sleeping behavior. The actions of the EMS crew did not cause Mrs. Lee's swelling as seen by her daughters when they arrived at the emergency room. Instead, such was caused by her existing illnesses, primarily renal failure and heart failure. Thus, there can be no award of damages for any such injury.
Everything that occurred with Mrs. Lee on the date of her death was medical and does not fall under the ambit of the NHRBR La. R.S. 40:1299.41 et seq.
Plaintiffs' position in this matter reduces to one in which they assert any time a nursing home resident has executed a DNR then experiences adverse symptoms so that she appears to be going down hill, the nursing home should do nothing and let the patient die. This position is simply untenable and not actionable under the NHRBR.

CONCLUSION
Finding no merit in the appellants' contentions, we affirm the decision of the trial court. Costs assessed to appellants.
AFFIRMED.