71 So.3d 1154 (2011)
Gwendolyn JONES and Sandra Durbin, Plaintiffs-Respondents
v.
RUSTON LOUISIANA HOSPITAL COMPANY, L.L.C. d/b/a Northern Louisiana Medical Center a/k/a Lincoln General Hospital, et al., Defendant-Applicant.
Nos. 46,356-CW, 46,202-CW.
Court of Appeal of Louisiana, Second Circuit.
August 10, 2011.
*1155 Stamey & Miller, Natchitoches, LA, by J. Mark Miller, for Plaintiffs-Respondents.
Blue Williams, L.L.P., by Kurt S. Blankenship, Metairie, LA, Christopher G. Otten, Mandeville, LA, for Defendant-Applicant.
Before GASKINS, DREW and LOLLEY, JJ.
LOLLEY, J.
This court granted a writ and docketed this matter for consideration after reviewing the application for supervisory writ of the defendant, Ruston Louisiana Hospital Company, L.L.C., d/b/a Northern Louisiana Medical Center (the "NLMC"). The Third Judicial District Court, Parish of Lincoln, denied the exception of prematurity filed by the NLMC in response to the petition of plaintiffs, Gwendolyn Jones and Sandra Durbin. For the following reasons, we affirm the trial court's judgment.

FACTS
Gwendolyn Jones and Sandra Durbin, as the sole surviving heirs of their father, Agnes J. Liles, filed suit against the NLMC for damages arising out of its alleged failure to abide by Liles' "Do-Not-Resuscitate" ("DNR") order, which was on record with the defendant. According to the original and amended petitions, Liles was admitted into the NLMC for medical treatment on July 10, 2009, and on July 16, 2009, he went into cardiac arrest. Despite the NLMC's knowledge of the DNR order, employees of the hospital resuscitated Liles, who suffered physical limitation and disabilities requiring rehabilitation until his ultimate death two months later on September 25, 2009.
Plaintiffs asserted claims for the medical expenses attributable to his post-resuscitation care, physical and mental pain and suffering, loss of enjoyment of life and cognitive decline. They also asserted a claim for bystander recovery. Simultaneous to the trial court filing, plaintiffs also filed a request for a medical review panel with the Louisiana Patients' Compensation Fund. In response, the NLMC filed an exception of prematurity in the trial court arguing that as a qualified healthcare provider under the Louisiana Medical Malpractice Act ("MMA"), La. R.S. 40:1299.41, et seq., it was entitled to have plaintiffs' claims against it reviewed by a medical review panel prior to the institution of litigation. The plaintiffs, relying on this court's opinion in Terry v. *1156 Red River Center Corp., 37,991 (La.App.2d Cir.12/10/03), 862 So.2d 1061, writ denied, 2004-0094 (La.03/19/2004), 869 So.2d 856, opposed the exception arguing that the conduct complained of by plaintiffs in their petition, i.e., failure to abide by a DNR order, did not fall under the MMA. After a hearing, the exception was overruled by the trial court. The NMLC sought supervisory review of the trial court's judgment.

DISCUSSION
Under Louisiana's MMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. La. R.S. 40:1299.47(A); LaCoste v. Pendleton Methodist Hosp., L.L.C., 2007-0008 (La.09/05/07), 966 So.2d 519. This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for consideration by a medical review panel before filing suit against the provider. La. C.C.P. art. 926; LaCoste, supra. The burden of proving prematurity is on the exceptor. Id.
The MMA applies only to "malpractice" as defined by the statute; other tort liability on the part of a qualified health care provider is governed by general tort law. Coleman v. Deno, 2001-1517 (La.01/25/02), 813 So.2d 303. The Louisiana Supreme Court has set forth six factors which determine whether a claim sounds in medical malpractice and must first be presented to a medical review panel. Coleman, supra at 315-16. Those factors are:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient's condition;
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;
(5) whether the injury would have occurred if the patient had not sought treatment; and,
(6) whether the tort alleged was intentional.
In Terry, supra, we considered the issue of whether a nursing home's failure to abide by the DNR order of one of its residents was actionable under the Nursing Home Residents' Bill of Rights ("NHRBR"), La. R.S. 40:2010.8, et seq., or whether the procedure under the MMA would be applicable. In Terry, employees of the nursing home found a resident unresponsive to stimulation, and in opposition to a DNR order on record, the employees instituted efforts to revive the resident. Subsequently, the resident's life support was discontinued and the resident died.
The deceased's heirs brought suit under the NHRBR, alleging that the nursing home had failed to abide by the DNR order causing the deceased and plaintiffs to suffer damages. The defendant filed an exception of prematurity contending that the matter should go before a medical review panel before the institution of litigation because such matters are covered under the MMA. The trial court in Terry agreed with the defendant nursing home and sustained the exception.
In reversing the trial court, this court expressly stated that it made "no determination of whether [the conduct] falls under the ambit of the MMA." Terry, supra at *1157 1064. However, the Terry court went on to apply the test set forth in Coleman, reasoning that the claim would not be subject to the MMA for the following reasons:
Our analysis of the facts of this case leads us to conclude that the problems [the deceased] experienced were not "treatment related" because the problems came as a result of [the nursing home's] failure to abide by [the deceased's] wishes not to be resuscitated by CPR. The fact that they "treated" her after they negligently acted does not bring this case under the MMA. Secondly, the directive stated that [the nursing home] was not to perform CPR, and it is clear that it is not necessary to have a medical expert to determine whether the directive was ignored. There is no evidence to support the idea that [the nursing home's] failure to abide by [the deceased's] wishes came as a result of an assessment of her condition. There is no dispute that nursing homes are covered under the MMA, but we are not deciding whether [the nursing home] performed a medical task and fell below the standard of care. Lastly, the plaintiffs do not contend that an intentional tort occurred; therefore, the sixth factor is inapplicable to this matter.
In reaching this conclusion, the Terry court was guided by the Louisiana Supreme Court's decision in Richard v. Louisiana Extended Care Centers, Inc., 2002-0978 (La.01/14/03), 835 So.2d 460, from which it quoted the following:
While clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving "health care" from the doctor or hospital when the negligent rendition of professional services occurs. This means that the act or omission must have occurred "during the patient's medical care, treatment or confinement." [Citation omitted].
Richard, supra at 468.
Although Terry is not precisely on point, it is certainly analogous to this case. In Terry, as in this case, the precise action of disregarding a DNR order was the issue. Therefore, for the reasons noted in Terry, we conclude that the actions by the nursing personnel in failing to honor the DNR order were not covered under the MMA as medical malpractice, but instead should be governed by Louisiana negligence principles of law. The plaintiff's lawsuit was not premature, and the trial court was not in error in so finding.

CONCLUSION
For the foregoing reasons, the judgment of the trial court denying the exception of prematurity filed by the defendant, Ruston Louisiana Hospital Company, L.L.C., d/b/a Northern Louisiana Medical Center, is affirmed. Costs of this proceeding are assessed to the defendant. As stated in the trial court's judgment, this matter will now proceed in the Third Judicial District Court for the Parish of Lincoln, Louisiana.
AFFIRMED.