867 So.2d 1000 (2004)
Sara MILLER, Through her Duly Qualified Tutrix, Mammie Miller, Plaintiff-Appellee
v.
NURSING HOMES MANAGEMENT, INC. d/b/a Chateau D'Arbonne, Defendant-Appellant.
No. 38,198-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2004.
*1001 Adams and Reese, LLP, by Richard B. Eason, II, Raymond P. Ward, Marrick Armstrong, New Orleans, for Appellant.
Cusimano and Aswell, by Harold W. Aswell, Farmerville, for Appellee.
Before BROWN, WILLIAMS and GASKINS, JJ.
GASKINS, J.
The defendant, Nursing Homes Management, Inc. d/b/a Chateau D'Arbonne (Chateau), contends that the claims of the plaintiff, Sara Miller, through her duly qualified curatrix, Mammie Miller, were based on medical malpractice.[1] Because the plaintiff did not first convene a medical review panel, Chateau argues that the present suit for damages was premature. The trial court overruled the exception of prematurity and Chateau appealed. For the following reasons, we reverse and remand for further proceedings.

FACTS
The plaintiff is 51 years old and has been bedridden since birth due to severe retardation and/or birth trauma. Mammie Miller is her mother and cares for her on a daily basis. In late July 2000, Sara was placed at Chateau while Mrs. Miller recuperated from a broken hip. The plaintiff alleges that during her two-week stay, she developed decubitus ulcers, also known as bedsores, on her heels as a result of not being turned frequently and not having socks on her feet. She was transferred to Union General Hospital for treatment of the sores. When she arrived, the plaintiff contends that she was covered in her own filth.
*1002 On July 27, 2001, the plaintiff filed suit against Chateau, claiming that the sores have not healed and may never heal. She alleged that Chateau breached the standard of care by failing to turn her, to keep socks on her feet, and to keep her in a clean and sanitary condition. She claims entitlement to damages due to Chateau's "lack of care."
Chateau filed exceptions of prematurity, lack of procedural capacity, and vagueness. In regard to the exception of prematurity, Chateau argues that the plaintiff was required to avail herself of the administrative remedies provided for in the Louisiana Medical Malpractice Act (MMA), La. R.S. 40:1299.41, et seq., by presenting her claims to a medical review panel prior to filing suit in district court.[2]
A hearing was held on April 14, 2003. On May 8, 2003, the trial court issued a ruling, denying the exception of prematurity. The court found that the plaintiff's claim was not rooted in medical care; therefore, the MMA does not apply and the plaintiff was not required to bring her claim before a medical review panel. Chateau appealed.

LEGAL PRINCIPLES
La. C.C.P. art. 926 provides for the dilatory exception of prematurity. A suit is premature if it is brought before the right to enforce the claim has accrued. La. C.C.P. art. 423. Prematurity is determined by the facts existing at the time a suit is filed. Yokem v. Sisters of Charity of the Incarnate Word, 32,402 (La.App.2d Cir.6/16/99), 742 So.2d 906.
The exception of prematurity may be utilized in cases where the applicable law has provided a procedure for a claimant to seek administrative relief before resorting to judicial action. Generally, the person aggrieved in such a case must exhaust all administrative remedies before being entitled to judicial review. Yokem v. Sisters of Charity of the Incarnate Word, supra.
The MMA provides such a mechanism by requiring all medical malpractice claims against covered health care providers to be submitted to a medical review panel (MRP) prior to filing suit in court. This administrative procedure affords the MRP an opportunity to render its expert opinion on the merits of the complaint. Yokem v. Sisters of Charity of the Incarnate Word, supra.
A judgment rejecting an exception of prematurity is interlocutory and unappealable in the absence of irreparable injury. However, a judgment requiring a health care provider to forgo the benefit of the MRP is considered appealable because MRP proceedings cannot be adequately replicated after reversal on appeal. The instant judgment is therefore appealable. Fincher v. State Department of Health and Hospitals, 29,640 (La.App.2d Cir.4/2/97), 691 So.2d 844.
In Richard v. Louisiana Extended Care Centers, Inc., XXXX-XXXX (La.1/14/03), 835 So.2d 460, the Louisiana Supreme Court considered whether medical malpractice claims against a nursing home that is a qualified health care provider under the MMA must be submitted to a MRP under the MMA or can be brought outside of the provisions of the MMA under the Nursing Home Residents' Bill of Rights (NHRBR) contained in La. R.S. 40:2010.8, et seq. The NHRBR provides a civil action for violation of certain enumerated rights held by residents of nursing homes. In Richard, the supreme court stated that *1003 nursing homes are "health care providers" under the MMA. The court reasoned that, in enacting the NHRBR in 1985, the state legislature did not intend to repeal, supplant, or replace the MMA's application to medical malpractice claims against nursing homes. However, the court noted that not all claims will constitute medical malpractice.
The MMA, in La. R.S. 40:1299.41(A)(8), defines "malpractice" as follows:
A. As used in this Part:
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
A "patient" is defined in La. R.S. 40:1299.41(A)(3) as "a natural person who receives or should have received health care from a licensed health care provider, under contract, expressed or implied."[3] "Health care" is defined under La. R.S. 40:1299.41(A)(9) as "any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement."
In Richard, supra, it was alleged that the staff of a nursing home negligently allowed a resident to fall from her wheelchair.[4] The court noted that this involved the "handling of a patient, including loading and unloading of a patient," falling within the definition of malpractice. However, the court noted that in prior decisions, it held that the patient must be in the process of receiving health care from a doctor or hospital when the negligent rendition of professional services occurs. Therefore, the act or omission must have occurred during the patient's medical care, treatment, or confinement. In Richard, the court stated that a key issue is whether a plaintiff's allegations of wrongdoing are related to treatment and are caused by a dereliction of professional skill.
The court reasoned that a nursing home resident is not always receiving medical care or treatment for a specific condition, but can always be said to be "confined" to the nursing home. However, the court opined that it was not the intent of the legislature to have every act by any health care provider during the patient's confinement in a nursing home covered by the MMA. To be covered under the MMA, the negligent act must be related to medical treatment. The court stated that in Coleman v. Deno, XXXX-XXXX (La.1/25/02), 813 So.2d 303, it set forth a six-part test to determine whether a negligent act by a health care provider is covered under the MMA:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

*1004 (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; (6) whether the tort alleged was intentional.
In this matter, the trial court applied the factors set forth in Coleman v. Deno, supra, and determined that this was not a medical malpractice claim. The court stated that the alleged wrong was not related to medical treatment or dereliction of professional medical care. The plaintiff was placed in the nursing home for 24-hour custodial care or shelter and not for medical attention. The trial court reasoned that the allegation that Chateau failed to keep the plaintiff in a clean and sanitary state, free of her own filth and free from bedsores, does not require medical testimony and does not involve an assessment of the plaintiff's condition. The court determined that presumably, the incident was within the scope of activities that Chateau was licensed to perform. The court noted that the injury could have occurred even if the plaintiff had not been admitted to the nursing home, if her caretaker failed to provide a sanitary environment and failed to turn the plaintiff at required intervals. According to the trial court, no evidence suggested that the incident was intentional.
The trial court concluded that, because the purpose of the plaintiff's residence in the nursing home was to receive shelter rather than medical care or treatment, there was no need to bring the matter before a MRP. Accordingly, the court found that the plaintiff's claim was not premature.
We find that the trial court erred as a matter of law in denying the exception of prematurity.
A decubitus ulcer which forms as a result of improper care in a health care setting is actionable as malpractice. See Smith v. Juneau, 95-0724 (La.App. 4th Cir.4/9/97), 692 So.2d 1365.
The case of Martin v. Comm-Care Corporation, 37,600 (La.App.2d Cir.10/16/03), 859 So.2d 217, writ denied, XXXX-XXXX (La.2/6/04), 866 So.2d 225, indicates that, where a resident enters a nursing home and already has bedsores which worsen after admittance allegedly due to improper care, the cause of action sounds in medical malpractice and a MRP is required. In Martin, the condition of the patient who was admitted to a nursing home with decubitus ulcers deteriorated and he died. His family filed a wrongful death suit, claiming that the nursing home failed to adequately treat the bedsores.[5]
In this matter, the plaintiff was completely bedridden. She required extensive care beyond basic shelter. The failure to give her the proper treatment required by her condition resulted in the development of decubitus ulcers. The allegations involve the dereliction of professional skill in caring for a bedridden patient such as the plaintiff.
Expert medical evidence will be required to determine whether the appropriate standard of care was breached. Allowing the condition to develop and remain untreated constitutes a failure to provide health care. Further, any claims regarding the failure of the nursing home to properly treat the plaintiff once the decubitus ulcers developed are squarely based *1005 upon medical malpractice.[6]
Caring for a bedridden patient to prevent problems such as bed sores was within the scope of activities the defendant was licensed to perform. The plaintiff alleges that the condition would not have developed if she had not been placed in the nursing home. There is no showing that the tort was intentional.[7]
Accordingly, we find that the issue of failure to treat the decubitus ulcer involved the medical treatment of the plaintiff and therefore, the plaintiff was required to submit that claim to a medical review panel before filing suit in the district court. The exception of prematurity is granted on this claim and the matter is remanded to the trial court for further proceedings.

CONCLUSION
For the reasons stated above, we reverse the ruling of the trial court, denying the exception of prematurity filed by the defendant, Nursing Homes Management, Inc. d/b/a Chateau D'Arbonne, on the issue of failure to treat the decubitus ulcer. The exception is granted and the case is remanded to the trial court for further proceedings. All costs in this court are assessed to the plaintiff.
REVERSED AND REMANDED.
NOTES
[1] We note that in the caption of this matter, Mammie Miller is designated as her daughter's tutrix. However, the record shows that the plaintiff is not a minor and Mammie Miller was appointed as the curatrix for her interdicted daughter.
[2] The exceptions of vagueness and lack of procedural capacity were later withdrawn by the defendant. The exception of prematurity is the only issue remaining in this matter.
[3] This provision was amended by Acts 2003, No. 479 § 1, to specifically include nursing home residents in the definition of a patient.
[4] The facts note the plaintiff's allegation of injury either when she was attacked by a nursing home employee, or when she fell from her wheelchair.
[5] This matter was later dismissed on an exception of prescription.
[6] See McLemore v. Westwood Manor Nursing & Rehabilitation L.L.C., 37,450 (La.App.2d Cir.8/20/03), 852 So.2d 1170, in which a patient was dropped by nursing home employees. The patient's leg was broken, but he was placed in his bed and the injury was not treated, resulting in the formation of blood clots. This court held that failing to provide appropriate care and medical treatment after the incident was a medical malpractice claim requiring a MRP.
[7] While not dispositive of this case, we note that provisions of the NHRBR contained in La. R.S. 40:2010.8, et seq. have been amended by Acts 2003, No. 506, to limit a resident's cause of action to injunctive relief. Recovery is now limited to attorney fees and costs and does not include damages.