902 So.2d 1280 (2005)
Leshia WOMACK, Individually and as the Duly Appointed Curator for Violet Nugent, Plaintiffs-Appellants
v.
AUTUMN LEAVES NURSING & REHABILITATION CENTER, L.L.C.; Central Management Company, L.L.C. and Kisatchie Corporation, Defendants-Appellees.
No. 39,710-CA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
Nix, Patterson & Roach by Kimberly Anne Ramsey, for Appellants, Leshia
*1281 Womack, Kaye Shivers and Sheila A. Whitehead.
Bolen, Parker & Brenner by Gregory Engelsman, Eric J. Miller, R. Christopher Nevils, Alexandria, for Appellees, Central Management Co., Autumn Leaves Nursing and Rehab. Center and Kisatchie Corp.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
Plaintiffs, the adult children of Ms. Violet Nugent, seek review of a judgment dismissing without prejudice their action against a nursing home as premature. For the following reasons, we reverse in part and remand.

FACTS
Ms. Violet Nugent became a resident of the Autumn Leaves Nursing & Rehabilitation Center ("Autumn Leaves") in January 2003 when she was 71 years old. The nursing home is owned by Kisatchie Corporation and operated by Central Management Company, L.L.C. According to the original petition by Leshia Womack, Ms. Nugent's curator, the Autumn Leaves' staff neglected Ms. Nugent's care and consequently caused her to suffer numerous problems, including dehydration, malnutrition, contractures, bedsores, falls, and urinary tract infections. Moreover, the petition alleged that the Autumn Leaves' staff allowed Ms. Nugent to lie in her own bodily waste for extended periods of time. Finally, the petition alleged that the staff physically abused Ms. Nugent. In addition to other remedies, the plaintiff specifically sought damages under La. R.S. 40:2010.9, the civil remedy provision in the Nursing Home Resident's Bill of Rights ("NHRBR"). The plaintiff specified in her petition that "no claim for medical malpractice is being asserted in this petition." Further, the petition distinguished those acts occurring prior to August 15, 2003, from those acts occurring on or after that date and asserted that the later claims were founded in negligence.
All of the defendants cumulatively filed an exception of prematurity. They asserted that Autumn Leaves was a qualified provider under the Medical Malpractice Act ("MMA"), La. R.S. 40:1299.40 et seq., that the two other defendants were corporate entities of Autumn Leaves, and that the plaintiff's claims must be heard by a medical review panel prior to the filing of a lawsuit. The defendants also raised an exception of vagueness.
Ms. Nugent died on July 30, 2004. On September 13, 2004, an amending petition was filed adding Ms. Nugent's other two adult children as plaintiffs. Defendants again raised an exception of prematurity to this petition.
The trial court heard argument on the exception on September 21, 2004. At the hearing, the plaintiffs' attorney stated that:
[W]e are contesting just the dignity [question] here today, the issues, specifically under Louisiana Revised Statute, Title 40:2010.8(A)(9), the right to be treated courteously, fairly, and with the fullest measure of dignity, and Louisiana Revised Statute, Title 40:2010.8(A)(10), the right to be free from mental and physical abuse. We are saying that those two rights have specifically been violated by Autumn Leaves' failure to clean Violet Nugent.
The court concluded that all of the facts alleged and claims made by the plaintiffs' petition must be heard by a medical review panel prior to the filing of a lawsuit and dismissed the plaintiffs' petition without prejudice. From the judgment dismissing their lawsuit, plaintiffs now appeal.

*1282 DISCUSSION
We observe that La. R.S. 40:2010.8 and La. R.S. 40:2010.9 were amended by Acts 2003, No. 506, § 1, effective August 15, 2003, and the plaintiffs' claims apparently arise from occurrences that took place both before and after the date of the amendment. Because the plaintiffs' petitions recognize the amendment and raise different theories for each time period, there is no need at this stage of the proceedings to address the effect of the amendment.
Almost identical claims were raised by plaintiffs in Vergil Henry, et al. v. West Monroe Guest House, Inc., et al., 39,442 (La.App. 2d Cir.3/2/05), 895 So.2d 680, which held that the claims for Ms. Henry's indignities of having to lie in her own waste for extended periods of time fell under the NHRBR and not the MMA. Here, too, the plaintiffs allege that Ms. Nugent, the nursing home resident, was "left to lie in [her] urine and waste for extended periods of time without being cleaned." The failure of the nursing home to properly tend to the resident's toileting needs is the principal claim in this case. Additionally, the plaintiffs claim that Ms. Nugent had been physically abused.
In Henry, this court discussed in detail the factual and legal distinctions between NHRBR claims and MMA claims. Autumn Leaves complains that the Henry court improperly relied on Gorham v. HCA Health Services of Louisiana, 34,721 (La.App. 2d Cir.05/17/01), 786 So.2d 348, for the statement that an action arising under the NHRBR may be brought in the district court without first submitting the claim to a medical review panel. The statement from the Gorham opinion was taken from a summarization of the defendants' arguments and was not a holding of the court. Thus, we agree that the Henry court's reliance on the Gorham statement may have been misplaced. Nevertheless, the statement from Gorham was not essential to the Henry opinion.
Henry cited Richard v. Louisiana Extended Care Centers, Inc., XXXX-XXXX (La.01/14/03), 835 So.2d 460, which superseded Gorham. In Richard, the supreme court thoroughly examined the definitions of malpractice, tort, patient, and health care under the MMA in determining that not every act by a health care provider during a patient's confinement in a nursing home is intended to be covered by the MMA and in concluding that a negligent act must be related to medical treatment to be covered under the MMA. The supreme court stated that "the nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be `confined' to the nursing home." Id. at 468. We believe this statement acknowledges the reality that nursing home residents often live out their lives in such facilities and that the staff's attention to the residents' daily personal needs is not always considered medical treatment.
Following the lead of Richard, supra, the Henry court examined the plaintiffs' claims under the six factors set forth in Coleman v. Deno, XXXX-XXXX (La.01/25/02), 813 So.2d 303, for determining whether the conduct of a qualified health care provider constitutes medical malpractice, and stated:
First, we find that changing a diaper is not medical treatment. Many non-medical persons have done it without difficulty or specialized medical training. Second, no medical expert is needed to determine whether a diaper is in need of a changing. Again, we are not discussing causation of decubitus ulcers, but instead, the personal dignity of a nursing home resident. Third, a medical assessment of the resident's condition was not *1283 necessary as Ms. Henry's care plan called for a diaper change every two hours, or as needed. This court has previously held that complaints are not treatment related when the failure of the nursing home arises from a failure to abide by the patient care plan.... Fourth, changing a diaper is something routinely performed by nurses aides, and not under the direction of a physician. Fifth, Ms. Henry would have suffered a loss of dignity for having dirty diapers, regardless of her residence in the nursing home. Sixth, this factor is not applicable in this case. Under this analysis, we find that plaintiffs' complaints fall under the NHRBR, and not the MMA.
(Citations omitted.)
In Henry, the allegation was that the defendants failed timely to change the resident's adult diaper; in this case, the allegation is that the defendants failed to clean the resident's bodily waste when appropriate. These claims are essentially identical, so the same analysis applies. The claim that a nursing home allowed a resident to lie in her own waste for extended periods of time is not related to medical treatment of that resident. Where plaintiffs allege that the resident's dignity was violated as a result of such actions, the claim does not fall under the MMA. Likewise, claims of physical abuse by nursing home staff are not cognizable under the MMA.
Further, as noted in Henry, the MMA is not the plaintiffs' exclusive remedy. For occurrences prior to August 15, 2003, the remedies of the NHRBR were "in addition to and cumulative with" other remedies; for occurrences on or after that date, the NHRBR "shall not be construed to restrict" other remedies.

CONCLUSION
For the reasons expressed in Henry, supra, the judgment of the trial court dismissing the plaintiffs' claims is hereby reversed in part insofar as it dismisses the claims pertaining to the loss of dignity suffered by Ms. Nugent for having to lie in her own waste for extended periods of time or for the claims pertaining to abuse by the staff; other claims must be pursued before the medical review panel. Costs of this appeal are assessed to defendants.
REVERSED IN PART AND REMANDED.